THE GUTHRIE DAILY LEADER v. E. D. CAMERON,
*Territorial Auditor.*

1. PUBLIC OFFICE—*What Constitutes—Not Public Officer, When.* A public office is the right, authority and duty created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, either executive, legislative or judicial, to be exercised for the benefit of the public, and unless the powers conferred are of this nature, the individual is not a public officer.

2. PUBLIC PRINTER—*Office Not Created by Legislature.* Section 25 of the Appropriation Act of 1895, p. 47, Session Laws, does not create the office of public printer and does not delegate any of the sovereign functions of the Territory to the State Capital Printing company.

3. SPECIAL LEGISLATION—*Prohibited by Act of Congress.* The act of congress approved July 30, 1886, 24 Statutes at Large, p. 170,

prohibits the territorial legislature from passing any special law, granting to any corporation, or individual, or association any special or exclusive privilege, immunity or franchise whatever.

4. PRIVILEGE  A privilege is a particular and peculiar benefit or advantage enjoyed by a person, company or class, beyond the common advantage to other citizens.

5. STATUTE—*Must Operate Equally Upon All.*  A statute relating to persons or things as a class is a general law.  One relating to particular persons or things of a class is special.  The number of persons upon whom the law shall have any direct effect may be very few by reason of the subject to which it relates, but it must operate equally and uiformly upon all brought within the relations and circumstances for which it provides.

6. SAME—*Void If Not General in Its Application*  A Statute, in order to avoid a conflict with the prohibition against special legislation must be general in its application to a class, and all of the class within like circumstances must come within its operations.  If it is limited in its application to one person or thing and is enacted for one purpose and for one person, it then becomes special in its subject matter and operation and is void.

7. SAME—*Special Act Conferring Special Privilege Void.*  Section 25 of the Appropriation Act of 1895 is a special act conferring a special privilege upon the State Capital Printing company and is void for conflict with the congressional inhibition.  The act imposes a duty upon the officers of the territory, and imposes no duty or obligation upon the State Capital Printing company, but confers a privilege which the company may accept or reject at its option without incurring any liability for a refusal to perform any work required by the act.

8. MANDAMUS—*Return Insufficient—Peremptory Writ Should Issue.*  The return of the auditor fails to show any valid reason for a failure to audit the accounts of the petitioners and the peremptory writ should issue.

*Original Proceeding in Mandamus.*

*John F. Stone,* for petitioner.

*C. A. Galbraith, Attorney General, Asp, Shartel & Cottingham,* contra.

The opinion of the court was delivered by

BURFORD, J.: This is an original application for

writ of *mandamus*. The Guthrie Daily Leader, a co-partnership, filed their petition with the chief justice, in which they allege that on May 14, 1895, the clerk of the supreme court ordered, for the use of said court, two hundred bar dockets, which they printed, bound, published and delivered, and which was of the value of seventy-eight dollars; that on the 14th day of March, 1895, the secretary of the territory ordered from them one six-quire insurance record, which they manufactured and delivered to said secretary, and which was of the value of sixteen dollars.

That statements of the amounts due upon said contracts for said materials furnished and printing and binding so done, duly approved by the clerk and secretary respectively, and duly certified, were filed with E. D. Cameron, territorial auditor, and said auditor was requested to audit and allow said accounts and draw his warrants on the territorial treasurer for said amounts, which said auditor refused to do. An alternative writ was allowed by the chief justice, returnable before the supreme court. The auditor made his return, in which he shows that by the provisions of § 25, ch. 4, Session Laws of 1895, all printing and binding done and stationery required, shall be done and furnished by the State Capital Printing company, and that said clerk and secretary had no authority to contract with the Daily Leader for said work, and that he had no authority to draw a warrant for such supplies in favor of any other person than the State Capital Printing company.

To this return the petitioners demurred on the ground that said return does not state facts sufficient to constitute an answer to the alternative writ.

This presents the question of the validity of the section of the Appropriation Act referred to by the return. Section 25 of the act making appropriations

for current expenses for the Territory of Oklahoma for the year 1895, p. 47, reads as follows:

"Sec. 25. All printing, binding, stereotyping and stationery of whatever character, which is paid for out of the territorial treasury, the treasurer of the board of regents of any territorial institution or from the territorial school land fund, shall be done and furnished by the State Capital Printing company of Guthrie, Oklahoma, and every territorial officer having work of this nature to be done, or stationery to purchase, shall furnish the copy to and have the same done and furnished by the State Capital Printing company, and such printing shall be paid for at the price established by the government of the United States through the printed instructions of the secretary of the interior to the secretary of the territory for territorial printing, unless the price is otherwise established by the Territorial Statutes.

" All proclamations and notices issued by the governor and other territorial officers to be paid for out of the territorial treasury, the treasury of the board of regents of any territorial institution, or the territorial school land fund, shall be published in the Daily and Weekly Oklahoma State Capital, of Guthrie, Oklahoma, and paid for as provided by the Statutes of Oklahoma for legal publications, said publications to be made in both daily and weekly editions of said paper at the same price as though published in the daily edition only. All acts and parts of acts in conflict with this section of this act are hereby repealed."

If this act is valid the return is sufficient; if it is invalid, then the premptory writ should issue.

The petitioners contend that the act either creates the office of public printer, and takes from the executive the right to fill the office by appointment, or, that it grants a special privilege, and is void for conflict with the act of congress limiting the powers of territorial legislatures.

We will consider these questions in the order they are presented in the briefs, and first, does § 25 create an office? The position of public printer may or may

not be an office; the name does not necessarily imply an office, and if it is such, it is clearly a creation of statute. In some of the states such position is denominated an office and its incumbent an officer, while in others, it is an employment, or the public printing and furnishing of stationery is supplied under contract, and there is no general rule on the subject. Each particular case must be determined by the law governing it. Ordinarily such agencies are not classed as offices, unless so declared by the legislature, yet it is true, that if such a position embraces all the elements of a public office, the person filling the same will be treated as a public officer whether the legislature calls him an officer or not.

Mechem in his valuable work on public officers, § 1, defines a public office as follows:

"A public office is the right, authority and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised for the benefit of the public. The individual so invested is a public officer."

And this definition is supported by an abundant weight of authority.

The same author, in § 4, in stating the difference between an office and an employment, says:

"The most important characteristic which distinguishes an office from an employment or contract is, that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that same portion of the sovereignty of the country, either legislative, executive or judicial, attaches for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer."

In *United States v. Hartwell*, 6 Wallace 385, Mr. Justice Swayne said:

"An office is a public station or employment conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument and duties."

Mr. Justice Grier, in *Sheboygan County v. Parker*, 3 Wallace 94, said:

"An officer of the county is one by whom the county performs its political functions, its functions of government."

That profound jurist and eminent author, Judge Cooley, in the case of *Throop v. Langdon*, 40 Mich. 673, defines an office thus:

"An office is a special trust or charge created by competent authority. If not merely honorary, certain duties will be connected with it, the performance of which will be the consideration for its being conferred upon a particular individual who for the time will be the officer.

"The officer is distinguished from the employe in the greater importance, dignity and independence of his position, in being required to take an official oath, and perhaps to give an official bond, in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of his position. In particular cases other distinctions will appear which are not general."

The celebrated expounder of American jurisprudence, Chief Justice Marshall, while on the circuit, in the case of *United States v. Maurice*, 2 Brockenbrough 103, said:

"Although an office is an employment, it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to enact or perform a service without becoming an officer. But if a duty be a continuing one, which is defined by rules prescribed by the government. and not by contract which an individual is ap-

pointed by government to perform, who enters on the duties pertaining to his station without any contract defining them, if those duties continue, though the person be changed, it seems very difficult to distinguish such a charge from an office, or the person who performs the duties from an officer."

In the case of *Bain et al. v. People ex rel.* 45 Ill. 403, Chief Justice Breese, speaking for the court, said:

"The term 'office' implies a delegation of some portion of the sovereign power to, and a possession of it by the person filling the office, and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments and sometimes to another, still, it is a legal power which may be rightfully exercised, and in its effects will bind the rights of others and be subject to revisions and corrections only according to the standing laws of the state."

In the opinion of the Judges to the Governor, 3d Greenleaf 481, the supreme court of Maine said:

"There is a manifest difference between an office and an employment under the government. We apprehend that the term office implies a delegation of a portion of the sovereign power to, and the possession of it by the person filling the office, and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments, and sometimes to another, still, it is a legal power which may be rightfully exercised; and in its effects it will bind the rights of others and be subject to revision and correction only according to the standing laws of the state. An employment merely, has none of these distinguishing features. A public agent acts only on behalf of his principal, the public, whose sanction is generally considered as necessary to give the acts performed the authority and power of a public act of law. And if the act be such as not to require such subsequent sanction, still it is only a species of service performed under the public author-

ity and for the public good, but not in the execution of any standing laws, which are considered as rules of action and the guardians of rights."

Mr. High in his work on extraordinary remedies, § 620, says:

"An office admitting of the remedy of *quo warranto* is a public position to which a portion of the sovereignty of the country either legislative, judicial or executive attaches for the time being."

In *Olmstead v. Mayor*, 42 N. Y. supreme court,481, the court held that one who receives no certficate of election or appointment, takes no oath of office, has.no tenure or term of office, discharges no duties and exercises no powers depending directly on authority of law, but simply performs such duties as are required of him by public officers, and whose responsibility is limited to them, is not an officer, and does not hold an office, although he is employed by public officers and is engaged about public work.

In the state of North Carolina the office of public printer was created; afterwards the legislature abolished the office, and directed that the joint committee on printing of the two houses of the general assembly make a contract for the public printing on behalf of the state. It was contended that the act was void upon the ground that the legislature had no power to make contracts, it being an executive function.

In the case of *Brown v. Turner et al.* 70 N. C. 99, the supreme court of that state said:

"As was said of the word 'contract,' we say that there is no magic in the word 'office.' When the legislature created and called it an office, it was an office; not because the peculiar duties of the place constituted it such, but because the creative will of the law-making power impressed that stamp upon it; therefore, when that stamp was effaced by the repealing act of 1869-70, it shrank to the level of an undefined duty. The authority that vested these duties

with the name and dignity of a public office, afterwards divested them of that name and authority.

"There being now no law of the land declaring it to be a public office, our next inquiry is, do the duties of public printer constitute it an office? The place is really *sui generis*, and therefore ordin·ry *creiteria* by which we distinguish and classify public offices cannot aid us to a conclusion here. It occupies that neutral ground where it may 'shade into' a legislative or executive function without disturbing the harmony of either. It comes within the definition of a public office because its duties relate to the public and are prescribed by public law, but so may the duties of a contractor or workman upon a public building. It seems not to be an office because all the duties of public printer, as prescribed by law, are mechanical only as much so as those of a carpenter or brickmason, calling for neither judgment or discretion, in a legal sense, and which may be performed by employes, men, women or children, in or out of the state, and on his death every unfinished duty of the printer can and must be, under existing law, completed by his personal representative. If it is an office, there is no law prescribing the term of duration of it, and it may be held for life as well as a term of years, which puts it out of harmony with the whole spirit and genius of our political institutions, a conclusion which can be forced upon us only on the most evident necessity."

Tested by the foregoing rules, it is clear that the act in question does not create a public office. The legislature has not designated the place an office. No oath or bond is required. No term of duration is fixed. No certificate of appointment or commission is provided for. No qualifications are prescribed, and none of the sovereign functions of the government are delegated. Certainly it cannot be said that in doing the mechanical work of manufacturing a blank book, printing a notice, order or proclamation, or supplying blanks, stationery and letter-heads for the territorial officers, or a docket for the supreme court, any of the sovereign functions of government are being exercised,

and unless such power is conferred or exercised, the individual performing the duties is not a public officer.

A public officer is required by law to perform the duties pertaining to his office, and for a refusal to perform such duties, he may be removed from office. Under the provisions of § 25, of the Appropriation Act, the State Capital Printing company is under no obligations to perform any of the labors or supply any of the material prescribed in said section. It is purely optional with said corporation whether it accepts any of the work or not, and there is no liability, criminal or civil, for a refusal to supply or furnish any of the articles which it is given the privilege of supplying. A duty is imposed upon the several territorial officers to furnish the copy and give orders to the State Capital Printing company for public supplies, and the privilege of doing the work, filling the orders and furnishing the supplies is conferred upon the State Capital Printing company. The acceptance of these orders becomes an employment and creates a contract in each instance between the State Capital Printing company and the territory. While the officer requiring the work or stationery is directed to apply to the State Capital Printing company for the same, the company may accept that which is profitable and refuse that which is unprofitable, at its pleasure. Hence, it seems to us, the act imposes a duty upon one party and confers a privilege upon the other.

Evidently this act does not create a public office and there is no such office as public printer in this territory.

The next question presented for our consideration is, do the provisions of § 25 conflict with the limitation imposed by the act of congress approved July 30, 1886, 24 Statutes at Large, 170? Said act is entitled:

"An Act to Prohibit the Passage of Local or Special

Laws in the Territories of the United States; to Limit Territorial Indebtedness, and for other purposes."

So much of the act as relates to the question before us, is as follows:

"The legislatures of the territories of the United States now or hereafter to be organized, shall not pass local or special laws in any of the following enumerated cases, that is to say, granting to any corporation or individual or association any special or exclusive privilege, immunity or franchise whatever.

"In all other cases where a general law can be made applicable, no special law shall be enacted in any of the territories of the United States by the territorial legislatures thereof."

Counsel upon both sides in the case at bar have supplied us with voluminous briefs, which display a vast amount of research, but do not evidence a very clear discrimination in the citation of authorities. Many of the cases cited deal with constitutional provisions and limitations, which, while somewhat similar to those of the act of congress refered to, are sufficiently dissimilar to render the authorities useless as precedents in the case before us.

In a number of the cases cited, the constitutional provisions prohibit the enactment of special or local laws in certain enumerated cases where a general law can be made applicable. Under a provision of this character the courts have almost invariably held that the power to determine whether or not a general law could be made applicable to a given subject matter was a legislative and not a judicial one, and when the legislature has exercised its prerogative, the courts will not interfere. In other cases the constitutional provision is, that all laws shall be general and operate throughout the state upon all persons or subjects alike.

Many of the cases cited relate solely to police regulations of the government wherein the legislative

power is supreme, and are not applicable to the question presented in this case.

We have examined all the cases cited by counsel, but it is not our purpose to review them here. It will be observed that the act of congress, *supra*, specifically provides that no special law shall be passed by the legislature of the territory, granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever, and in all other cases except the ones enumerated in the act, no special law shall be enacted where a general law can be made applicable.

This limitation amounts to an absolute prohibition on the legislature enacting any special law in reference to the subjects enumerated.

It was conceded in the argument that the State Capital Printing company is a corporation, and it must be conceded that the legislature has no power to pass any special law, granting to such corporation any special or exclusive privilege.

Does § 25 confer a privilege? It confers upon the State Capital Printing company the right to do and furnish all the printing, binding, stereotyping and stationery of whatever character which is paid for out of the territorial treasury, the treasury of the board of regents of any territorial institution or from the territorial school fund. And any territorial officer, having work of this kind to be done, is required to furnish the copy to and have the work done by said State Capital Printing company. This is an exclusive right because the grant carries with it the right to all the work of he character therein named. No other person or corporation can share this privilege or enjoy an equal privilege, nor can the legislature confer equal rights upon other persons or corporations, because the entire privilege is granted to the former corporation and

there is no residue for distribution, nor can a like privilege be conferred upon similar corporations for the same reasons. The right to furnish all the printing, binding, stereotyping and stationery for all of the territorial officers, the boards of regents of the public institutions, the school land board, and the supreme court, including publication of the court reports, is not only a special privilege, but is a valuable privilege, and ought, upon sound business principles of economy and right, to be let to the lowest responsible competitive bidder, under the supervision and control of some bonded officer or board.

A privilege is "a particular and peculiar benefit or advantage enjoyed by a person, company or class, beyond the common advantage of other citizens." (Black's Law Dictionary, 941.)

A special privilege, in constitutional law, is "a right, power, franchise, immunity or privilege granted to or vested in a person or class of persons to the exclusion of others, and in derogation of common right." (Black's Law Dictionary, 1113.)

"The state, it is to be presumed, has no favors to bestow and designs to inflict no arbitrary deprivation of rights; special privileges are always obnoxious and discriminations against persons or classes are still more so, and, as a rule of construction, it is to be presumed they were probably not contemplated or designed." (Cooley Const. Lim. p. 485.)

Anderson, in his Law Dictionary, defines special or exclusive privilege to be "any particular or individual authority or exemption existing in a person or class of persons and in derogation of common right; as, the grant of a monopoly."

A monopoly is an exclusive privilege not enjoyed by others, and we think the grant to the State Capital Printing company comes within all the terms of the above definitions, and that § 25 of the Appropriation

Act does grant a special and exclusive privilege to a corporation. The next question for consideration is whether or not such privilege is granted by a special law, as contemplated in the act of congress of July 30, 1886.

"A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special." (Sutherland, Stat. Con. § 121; *Wheeler v. Philadelphia*, 77 Pa. St. 338.)

"The number of persons upon whom the law shall have any direct effect may be very few, by reason of the subject to which it relates, but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides." (Sutherland, Stat. Con. § 124.)

In *McAunich v. Railroad Co.* 20 Iowa, 338, the Iowa supreme court defined the distinction between general and special laws thus:

"These laws are general and uniform, not because they operate upon every person in the state, for they do not, but because every person who is brought within the relations and circumstances provided for is affected by the law. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of persons within the scope of their operation."

Special laws are those made for individual cases, and for less than a class. Laws are general if they apply to a class, though the class may be very limited, or even where there is but one of the class, but the law must be general in its application and embrace all of the given class, and not be specific in its application to a particular person or thing.

The supreme court of Minnesota, in *State v. Cooly*, 58 N. W. 150, said:

"Another proposition that may be laid down as beyond question is, that if the basis of classification is valid, it is wholly immaterial how many or how few

members there are in the class. One may constitute a class as well as a thousand, although, of course, the fewer the members, the closer the courts will scrutinize the act to see that it is not an evasion of the constitution."

Mr. Sutherland, in his valuable work, further says:

"Within certain limits, subjects may be grouped on the basis of such differences for general legislation. Beyond those limits, such differences would not be the basis of classification, but the ground of segregation by which each individual would be distinguished for for special enactment. The prohibition is in the way of legislation for individual cases. It is equally fatal to such legislation, though it be general in form. If a statute is plainly intended for a particular case and looks to no broader application in the future, it is special or local, and if such laws are prohibited on the subject to which it relates, it is unconstitutional." (Sutherland, § 129.)

This question was quite extensively and ably treated by the supreme court of New Jersey in the case of *Rutgers v. New Brunswick*, 22 New Jersey Law 53; the court said:

"In the strictest sense, special or local laws, would comprise all such laws as are confined in their application to a limited number of localities or subjects, and a general law be one universal in its application. In this sense, acts of the legislature relating to a particular kind of private corporations, or to a particular class of municipalities, would fall within the prohibition of the constitutional interdiction, as being special or local, however general they might be, in their application within the scope of the purpose of such legislation. But this is not the signification given to their terms by this court in the case of *Van Riper v. Parsons*, 11 Vroom, 1, id. 123. When the case was first before this court, it was held, that within the sense of these prohibitory clauses, a general law, as contradistinguished from one special or local, is a law that embraces a class of subjects or places, and does not omit any subject or place naturally belonging to such class. The second time that case passed under judi-

cial examination in this court, the holding was that a law framed in general terms, restricted to no locality, and operating equally upon all of a group of objects which, having regard to the purpose of the legislature are distinguished by characteristics sufficiently marked and important to make them a class by themselves, is not a special or local law, but a general law, without regard to the consideration that, within this state, there happens to be but one individual of that class, or one place where it produces effects."

It is further said by Mr. Sutherland:

"A law may be general in its terms, and apply to a class constituted by having characteristics which make it a class, and yet be an illusory classification, which will not warrant legislation confined to it where special or local legislation is prohibited. The grouping must be founded on peculiarties requiring legislation, and legislation which by reason of the absence of such peculiarities is not necessary or applicable outside of that class. In other words the true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which will thus serve as a basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction, having a reference to the subject matter of the proposed legislation between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such in the nature of things, as will in some reasonable degree at least, account for and justify the restriction of the legislation. Distinctions which do not arise from substantial differences so marked as to call for separate legislation, constitute no ground for supporting such legislation as general." (Sutherland, § § 127 and 128.)

These authorities fully establish the doctrine that a law, in order to avoid a conflict with the prohibition against special legislation, must be general in its application to a class, and all of the class within like cir-

cumstances must come within its operations. The law under consideration does not have this effect; it is limited in its application to the State Capital Printing company, and is thus special in its subject matter and its operation. It is a law enacted for a particular purpose and for a particular person, and does not operate alike upon all of a class. The authorities cited, which hold that a law is general if it applies to all of a class, although there is but one of the class, do not apply to a statute like the one under consideration. In those cases the legislature did not attempt to name the beneficiary of the act, but the law was general in its terms, and it happened that there was but one of the class that came within its general provisions.

If the legislature had provided that all the public printing and binding should be done by a corporation, equipped with a bindery, printing presses and lithographing department, and the State Capital Printing company had been the only institution of this class, it would then be entitled to the contract or employment, and the law would not be subject to the objection now made. Or, if the law had granted this privilege to any other classification, without making it exclusively applicable to some particular person or corporation, it would withstand such assault under the authorities quoted.

In our judgment, the statute in question comes directly within the prohibition imposed by the act of July 30, 1886, and is therefore void.

We have given consideration to the argument of counsel for the respondent, that the terms, "privileges, immunities or franchises," must be treated collectively, and that before a law can be held invalid, it must violate all embraced in said collective terms. But we cannot assent to this proposition. It would

destroy much of the force of the statute and defeat some of the most evident purposes of congress.

Our conclusion is that § 25 is a special law, granting a special and exclusive privilege to the State Capital Printing company, and is invalid.

It has been contended at some length that the court should refuse jurisdiction in this case for the reason that the State Capital Printing company is not made a party. This contention would have considerable weight were it not for the fact that the only question presented is one of law, and while the State Capital Printing conpany is interested in having the law properly determined, there is nothing in the case that affects adversely their substantial rights, and nothing that can bind such corporation.

It is not denied that the petitioners performed the work for which they are demanding pay, and that the officers of the territory received and accepted the articles mentioned in the writ. The only objection the auditor makes to allowing and auditing the account is, that the law in question makes it his duty to audit accounts for such purposes only in favor of the State Capital Printing company, and when this law fails, the petitioners are entitled to have the accounts audited and paid.

The demurrer to the return is sustained and peremptory writ ordered to issue. There is no question raised as to the practice in this case, or objection made that a demurrer is not the proper mode of raising the questions discussed, and we do not determine the question of practice, but treat the case on the theory it is presented.

All the Justices concurring.