The Attorney General has received and considered your request for an opinion with respect to the following questions: 1. May a duly elected and qualified member of the board of education of an independent school district serve concurrently as a member of the board of directors of a county free fair association created under the provisions of 2 O.S. 104 [2-104] et. seq. (1971)? 2. If not, does the acceptance of the position of director of the county free fair association ipso facto vacate the previous position where no certificate of election is issued as required by 2 O.S. 104c [2-104c] (1971)? The response to your first question must be in the negative since both positions constitute a "public office" and the provisions of 51 O.S. 6 [51-6] (1971) prohibit so-called dual office holding. Title 51 O.S. 6 [51-6] (1971) provides as follows: Except as may be otherwise provided, no person holding an office under the laws of the State and no deputy of any officer so holding any office, shall, during his term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the State. Provided, that the provisions of this Section will not apply to notaries public and members of the Textbook Commission. The prohibition, under the clear language of the statute, is against a single individual from concurrently holding two or more offices "under the laws of the state," i.e., "public offices." The question of whether a position is a "public office," or an employment, or under contract was considered in Guthrie Daily Leader v. Cameron, 3 Okl. 677,41 P. 635, 636 (1895), wherein the following was quoted with approval: " 'A public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised for the benefit of the public. The individual so invested is a public officer . . . The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive, or judicial, attaches for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer.' . . ." See also State v. Sowards, 64 Okl. Cr. 43, 82 P.2d 324
(1938). The distinction between an "office" from mere "employment" is described in Maddox v. State,249 S.W.2d, 972, 973 (Ark. 1952), as follows: "Since the distinction between a public officer and a public employee tends to become indistinct when the position in dispute has some of the characteristics of each, we have never attempted to frame an inflexible definition of either. Yet the governing principles are well established. A public officer ordinarily exercises some part of the State's sovereign power. His tenure of office, his compensation, and his duties are usually fixed by law. The taking of an oath of office, the receipt of a formal commission, and the giving of a bond all indicate that a public office is involved, although no single factor is ever conclusive. . . On the other hand, mere public employment differs from a public office in that some or all of these characteristics are lacking." A member of a board of education of an independent school district has long been regarded as a public office or a position of public trust. Gibson v. Crowder, 196 Okl. 406, 165 P.2d 628 (1946); see also Op. Att'y. Gen. Nos. 71-219, 72-127, 72-132, 72-256; Wimberly v. Deacon, 195 Okl. 561, 144 P.2d 447 (1944) regarding a regent for a state university. As described in Farley v. Board of Education of City of Perry, 62 Okl. 181,162 P. 797 (1917), a public officer is one "whose duties are fixed by law and who in the discharge of the same knows no guide but established laws." Syllabus 1. As with a member of a board of education whose duties and powers are prescribed and limited by statute, 70 O.S. 5-101 [70-5-101] et seq. (1971), the creation and operation of a county free fair association finds its genesis in the Oklahoma statutes. 2 O.S. 104 [2-104], et seq. (1971). It is to be noted that a free fair association is organized and operated "under the laws of the state," 2 O.S. 104 [2-104], that the board of directors is elected by the public, 2 O.S. 104c [2-104c], receives a certificate of election from the county clerk, 2 O.S. 104c [2-104c], is vested with control of all money "levied and collected," 2 O.S. 104d [2-104d], is or can be recipient of taxes levied by the county, 2 O.S. 104e [2-104e], presents its estimate of needs to the county excise board, 2 O.S. 104f [2-104f], and causes funds to be paid out which includes funds raised by taxes, 2 O.S. 104g [2-104g]. Such powers and duties are identical to many of the powers and duties of a school board and must be regarded as the exercise of "some portion" of the sovereignty of government. Guthrie Daily Leader v. Cameron, supra. Your second question requires some assumption of fact, to-wit: that a school board member was duly elected as a director of a county free fair association and, was, subsequent to his election, assumed and entered into the second office, exercising all attendant powers as a member of the board of directors notwithstanding that a "certificate of election" has not been issued. Prohibitions against "dual office holding," whether arising from statute, e.g. 51 O.S. 6 [51-6] (1971), or constitution, e.g. Okla. Const. ArticleII, Section 12, are held to be self-executing and work an automatic vacation of the first office. As expressed in Wimberly v. Deacon, supra, 195 Okl. at 567: The very purpose of the rule of ipso facto vacation by the acceptance of a prohibited office is to prevent confusion and uncertainty. In 42 Am. Jur. 941, it is said: "The rule that acceptance of a second office operates to vacate one already held when not declared by positive provision of law seems to be based on a presumption of an election between the two offices as evidenced by the acceptance of the second. It is a certain and reliable rule, and one that is indispensable for the protection of the public. For the public has a right to know, in the case of attempted incompatible office holding, which office is held and which surrendered, and it should not be left to chance or to the uncertain whim of the office holder to determine. . . ." As a consequence, the later case of Gibson v. Crowder, supra, the Oklahoma Supreme Court held in Syllabus 1: If an office held by a person is properly classified as an office under the laws of this state, and thereafter the same person is regularly appointed or elected to another such office, which he fully accepts and enters into, the acceptance of the second office operates ipso facto to vacate the first office theretofore held, and the intention or purpose of the officer with reference to retaining the first office is immaterial. In such case the holding of the second office is valid and not in violation of the law prohibiting the holding of more than one office under the laws of the state. Emphasis added. With respect to the matter of the issuance of a certificate of election, such an act appears to be immaterial to the ipso facto vacation of the first office. The conduct of the election and the issuance of the certificate is required in 2 O.S. 104c [2-104c] (1971). The recitation of the issuance of a certificate of election appears to describe a ministerial, as contrasted with a discretionary duty of the County Clerk. The language — "the County Clerk . . . shall issue to each person elected a certificate of election" — is mandatory in form and recites a clear legal duty on the part of the clerk. Means v. Vernon, 108 Okl. 123, 235 P. 163 (1925). It is not necessary to this opinion to determine whether the clerk could be compelled by mandamus to issue such a certificate. Assuming that the election was conducted in such a manner as prescribed by statute and the results thereof are capable of ascertainment with mathematical certainty, the elected director is entitled to such a certificate. Edmondson v. State ex rel. Phelps, 533 P.2d 604,616, (Okl. 1975). Under the language of Gibson v. Crowder, supra, the ipso facto vacation of the prior office occurs when the elected official "fully accepts and enters into" the second office. The operative word is "acceptance." Acceptance vacates the prior office held and whether a certificate of election is issued is immaterial. Therefore, it is the opinion of the Attorney General that a member of a board of education of an independent school district may not under the provisions of 51 O.S. 6 [51-6] (1971) serve also as a director of a county free fair association, each position being a public office and, assuming that the election was conducted as prescribed by statute, the acceptance and entry into the second office ipso facto vacates the former office irrespective of whether the ministerial act of issuance of a certificate of election has been accomplished. (MANVILLE T. BUFORD) (ksg) ** SEE: OPINION NO. 92-565 (1992) (UNPUBLISHED) ** ** SEE: OPINION NO. 92-583 (1992) (UNPUBLISHED) **