Dear Representative Reynolds,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May a legislator, during his or her term of office, be employed for compensation as either a part-time consultant for, or executive director of, a community action agency?
 I. Background
¶ 1 Your question concerns the propriety of an employment relationship between a current legislator and a community action agency. To analyze such propriety we must first set forth, (1) the constitutional and statutory provisions[1] governing employment by current legislators, and (2) the statutes, if any, creating and governing the operations of a community action agency.
A. Constitutional and statutory provisions which governlegislative employment
¶ 2 The relevant provision of the Oklahoma Constitution, Article V, Section 23 provides:
 No member of the Legislature shall, during the term for which he was elected, be appointed or elected to any office or commission in the State, which shall have been created, or the emoluments of which shall have been increased, during his term of office. . . . [N]or shall any member [of the Legislature], during the term for which he shall have been elected, or within two years thereafter, be interested, directly or indirectly, in any contract with the State, or any county or other subdivision thereof, authorized by law passed during the term for which he shall have been elected.
Id. (emphasis added).
¶ 3 The statutory provision relevant to employment of a State legislator is found at 51 O.S. Supp. 2002, § 6[51-6].[2] In pertinent part it provides:
A. Except as may be otherwise provided, no person holding anoffice under the laws of the state and no deputy of any officer so holding any office shall, during the person's term of office,hold any other office or be the deputy of any officer holding any office, under the laws of the state..[3]
Id. (emphasis added) (footnote added).
B. Statutory provisions which establish and govern communityaction agencies
¶ 4 The statutory provisions in Title 74 which establish and govern community action agencies provide:
§ 5034. Purpose of §§ 5035 to 5040
 It is the purpose of Sections 41 through 46 of this act to delineate a system of community action agencies to enhance and stimulate economic opportunity and self-sufficiency for all citizens. It is hereby found and determined that community action agencies provide services which are basic and essential to the well-being of low-income and economically disadvantaged persons of this state. It is further determined that the delivery of such services should be officially recognized in order to assure the effective and efficient continuation of such services and to solve existing problems of human service delivery systems.
74 O.S. 2001, § 5034[74-5034] (footnote omitted).
¶ 5 § 5036. Community action agency defined — Evaluation of service areas and agencies
 A community action agency shall be defined as a public or private nonprofit agency, designated by the Oklahoma Department of Commerce.
 The Oklahoma Department of Commerce shall have the right to evaluate existing service areas and community action agencies and, as may be necessary, modify boundaries of the service areas or rescind designation in accordance with the provisions outlined in Section 45 of this act so that services will be adequately and efficiently provided.
Id. (footnote omitted).
¶ 6 § 5037. Community action agencies — Boards of directors
 A community action agency shall establish a governing board of directors which shall consist of not less than twelve nor more than thirty-six members. . . . The community action agency board of directors shall be responsible for:
 1. The appointment and dismissal of an executive director of the community action agency[.]
Id.
¶ 7 § 5038. Designating community action agencies
 To ensure statewide delivery of Community Services Block Grant services, the Oklahoma Department of Commerce shall establish a process to designate community action agencies.
Id.
¶ 8 § 5040. Purpose and activities of community action agency
 A community action agency shall serve as a primary advocate for the reduction of the causes, conditions and effects of poverty and shall provide social and economic opportunities that foster self-sufficiency for low-income persons. Any service provided by a community action agency through the Community Services Block Grant opportunity shall be made available to all eligible persons within the community action agency's service area. The activities of a community action agency shall, subject to rules and regulations promulgated by the Oklahoma Department of Commerce, include but not be limited to the following:
 1. Informing state and local governments, private agencies and organizations, and citizens of the nature and extent of poverty within the service area;
 2. Developing, administering, and operating community social and economic programs to reduce poverty within the entire area;
 3. Providing and advocating for training and technical assistance to the poor and other residents within the service area to better define human problems, improve services, and facilitate citizen participation;
 4. Promoting interagency cooperation and coordination in providing services to low-income persons;
 5. Entering into contracts with federal, state, and local public and private agencies and organizations as necessary to carry out the purposes of this act; and
 6. Engaging in any other activity necessary to fulfill the intent of this section and Sections 40 through 45 of this act.
Id. (footnotes omitted).
¶ 9 Other relevant statutes in Title 74 include, in pertinent part:
§ 482. Powers and duties
 The Advisory Committee on Intergovernmental Relations shall:
. . . .
 10. Review technical and financial assistance available to counties, cities, municipalities and agencies owned and controlled by them, governmental conferences or councils, regional planning commissions, community development groups, community action agencies, and similar agencies for the purposes of aiding and encouraging an orderly, productive, and coordinated development of the state, and to strengthen local planning responsibility and capability[.]
Id. (emphasis added).
 ¶ 10 § 5017. Department of Commerce — Additional functions and responsibilities
. . . .
 5. Cooperate with and provide technical and financial assistance to counties, cities, municipal corporations and agencies owned and controlled by them, governmental conferences or councils, regional planning commissions, community development groups, community action agencies, Indian tribes and similar agencies created for the purposes of aiding and encouraging an orderly, productive and coordinated development of the state, and to strengthen local planning responsibility and capability[.]
Id. (emphasis added).
¶ 11 2003 Okla. Sess. Laws ch. 193, § 1 (amending 51 O.S.Supp. 2002, § 152[51-152]) provides in pertinent part:
As used in The Governmental Tort Claims Act:
. . . .
8. "Political subdivision" means:
. . . .
 n. for purposes of The Governmental Tort Claims Act only, any community action agency established pursuant to Sections 5035 through 5040 of Title 74 of the Oklahoma Statutes, and all their institutions, instrumentalities or agencies[.]
Id.[4]
 ¶ 12 § 85.58A. Comprehensive professional risk management program — Administrator — Participation by community action agencies
 A. The Department of Central Services shall establish for all state agencies, whether or not subject to the Central Purchasing Act, and other entities as provided by law a comprehensive professional risk management program. . . .
. . . .
 H. 1. a. Any community action agency established pursuant to Sections 5035 through 5040 of this title may participate in the comprehensive professional risk management program established pursuant to this section for risks incurred as a result of operating a Head Start program or providing transportation services to the public. The Risk Management Administrator shall obtain or provide for insurance coverage for such community action agencies or bonding for employees of such community action agencies. Any liability insurance coverage obtained or provided shall include expenses for administrative and legal services obtained or provided by the Risk Management Administrator.
74 O.S. Supp. 2002, § 85.58A[74-85.58A].
 ¶ 13 § 85.58E. Risk management insurance coverage — Transportation for the elderly and handicapped
 A. The Risk Management Administrator, pursuant to the provisions of this section and Section 85.34 of Title 74 of the Oklahoma Statutes, may obtain or provide insurance coverage for any vehicle used by any entity specified in subsection B of this section for transportation services for elderly and/or handicapped persons. . . .
 B. The Risk Management Administrator may obtain or provide the insurance coverage authorized by subsection A of this section for:
1. Counties;
2. Municipalities;
 3. Community action agencies designated pursuant to Sections 5035 through 5040 of Title 74 of the Oklahoma Statutes[.]
74 O.S. 2001, § 85.58E[74-85.58E].
 II. Analysis Of The Constitutional And Statutory Provisions
¶ 14 The relevant provisions here restrict a State legislator, during his or her term in office, from: (1) being appointed toany "office or commission in the State, which shall have beencreated, or the emoluments of which shall have been increased,
during his [or her] term," (Okla. Const. art. V, § 23 (emphasis added)); (2) "be[ing] interested, directly or indirectly, in anycontract with the State, or any county or other subdivisionthereof, authorized by law passed during the term for which he[or she] shall have been elected (id. (emphasis added)); or (3)"holding an office under the laws of the state."[5] 51O.S. Supp. 2002, § 6[51-6](A) (emphasis added).
A. A current legislator's employment as a consultant orexecutive director does not violate the provision of Article V,Section 23 of the Oklahoma Constitution, that proscribesappointment to an office in the State.
¶ 15 We first examine the question whether the appointment to the position of either consultant or executive director during a legislator's term of office violates Article V, Section 23 of the Oklahoma Constitution. We must determine whether a community action agency is the "State,"[6] and if so, whether a position as a consultant or executive director is an office, such that the office was created or emoluments increased during the legislator's term of office.
¶ 16 The term "State" is not defined in the statutes which created the community action agencies, nor is it defined in Article V, Section 23 of the Oklahoma Constitution. It is, however, defined in the Governmental Tort Claims Act.[7]
"`State' means the State of Oklahoma or any office, department,agency, authority, commission, board, institution, hospital, college, university, public trust created pursuant to Title 60 of the Oklahoma Statutes of which the State of Oklahoma is the beneficiary, or other instrumentality thereof[.]" 51 O.S. Supp.2002, § 152[51-152](10) (emphasis added). Under this definition, is a community action agency[8] the State, though not denominated as such in the statute?
¶ 17 The statutes set out above at 74 O.S. 2001, §§ 5034[74-5034]
through 5040 lead us in our analysis. A community action agency may be either a public or private non-profit agency.[9]
The statutes seem to contemplate that a group of citizens may form a private, non-profit group and seek designation as a community action agency. 74 O.S. 2001, §§ 5036[74-5036], 5038. The designated private community action agency would then be required to follow statutory requirements concerning the membership of its board of directors and the carrying out of certain duties. Id. §§ 5037, 5040.
¶ 18 While no Oklahoma judicial authority or Attorney General's Opinions have determined whether a community action agency is the "State," two Oklahoma Statutes concerning community action agencies are instructive in our analysis. See 74 O.S. 2001 
Supp. 2002, §§ 8558A, 85.58E. These two statutes, quoted earlier, are located in the Comprehensive Professional Risk Management Program.
¶ 19 These statutes indicate that a community action agency is not the "State" or a "State agency." If a community action agency were the "State" there would be no need to set out a separate authorization for insurance for two community action agency services, operating a Head Start program and transportation for the public, specifically including the handicapped or elderly, as found in Sections 85.58A(H) and 85.58E of Title 74.
¶ 20 An analogous statute in which the Legislature explicitly stated that "public non-profit" rural water, sewer, gas and solid waste management districts are State agencies is also instructive. See 82 O.S. 2001, §§ 1324.1-1324.50[82-1324.1-1324.50] (the Rural Water, Sewer, Gas and Solid Waste Management Districts Act). The Legislature, after two rulings of the Oklahoma Supreme Court holding that such districts were not governmental entities,[10] amended the Rural Water, Sewer, Gas and Solid Waste Management Districts Act to explicitly state that, if county commissioners find that a district should be created, "thereupon the district shall be a body politic and corporate and an agency and legally constituted authority of the State of Oklahoma for the public purposes set forth in this act." 82 O.S.2001, § 1324.6[82-1324.6]
¶ 21 The statutes organizing community action agencies, as set forth in Part I(B) above, are silent concerning whether a community action agency is the "State" or a "State agency." "[L]egislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent." City of Duncan v. Bingham, 394 P.2d 456, 460 (Okla. 1964). The legislative intent that a community action agency not be considered the "State" or a "State agency" is buttressed by this rule of construction.
¶ 22 While no Oklahoma court has determined whether a community action agency could be considered the "State," other jurisdictions have considered this issue. In Bankston v. Board of Ethics, 715 So.2d 1181, 1184-85 (La. 1998), the Supreme Court of Louisiana determined that a private, non-profit community action agency was not a governmental entity. Id. The court quoted, with approval, an earlier opinion of the Louisiana Attorney General, La. Atty. Gen. Op. No. 97-69 (1997), holding that a private, non-profit corporation did not "constitute an agency, board, commission, or instrumentality of the state or its political subdivisions." Id. at 1185 n. 9.
¶ 23 However, the Superior Court of Connecticut examined whether a development corporation created by a community action agency, which had been established first as a private corporation and then designated by ordinance, should be subject to Connecticut's Freedom of Information Act. See Meri-Weather, Inc., v. Freedom of Info. Comm'n, 778 A.2d 1038 (2000). The court undertook a detailed review of factual findings concerning the functions of the community action agency, examining several factors which led it to determine that the community action agency was a public agency subject to the Freedom of Information Act, because it was created by the government and subject to considerable government involvement and control. Id. at 1042.[11]
The case law provides no clear direction, however, because the Oklahoma Legislature, even though it could have done so, did not declare a community action agency a "State agency"; because the Risk Management Program indicates that a community action agency is not a "State agency," but rather another "entity," the conclusion follows that a community action agency is not the "State" under Article V, Section 23 of the Oklahoma Constitution. Thus, employment by a legislator as a consultant or executive director during his or her current term does not constitute an appointment "in the State" in violation of Article V, Section 23.
B. Employment as a consultant or executive director by a currentlegislator does not violate the provision of Article V, Section23 of the Oklahoma Constitution that proscribes a Legislatorhaving an interest in a contract with the State or asubdivision.
¶ 24 The second relevant provision of Article V, Section 23 provides a legislator may not have an interest in a contract with the State, a county or any other subdivision, authorized by any law passed during the term for which he or she was elected. Having determined above that a community action agency is not the "State," it follows that employment or consulting with a community action agency, to the extent such employment could be considered giving rise to a contract, does not constitute having an interest in a contract with the State.
¶ 25 However, a further question must be answered. Article V, Section 23 provides that a legislator may not be interested in a contract with a "subdivision" of the State. Thus it is necessary to determine whether there is a difference between the "State" and a "political subdivision" and, if so, whether a community action agency is a political subdivision of the State.
¶ 26 While reviewing the authority of rural water, sewer, gas and solid waste management districts the Attorney General opined that a subdivision has general political authority while a rural district was more limited in its purpose, and thus not a political subdivision. A.G. Opin. 78-205, 516-17. Likewise, a limited-purpose community action agency is not a political subdivision.
¶ 27 This inquiry is aided by the definition of "political subdivision" in the Governmental Tort Claims Act. Section 152 of Title 51 states in pertinent part:
8. "Political subdivision" means:
a. a municipality,
b. a school district,
c. a county,
. . . .
 n. for purposes of The Governmental Tort Claims Act only, any community action agency established pursuant to Sections 5035 through 5040 of Title 74 of the Oklahoma Statutes, and all their institutions, instrumentalities or agencies[.]
Id. Thus, in only one narrow circumstance has the Legislature denominated a community action agency as a political subdivision.
¶ 28 Again, there is no relevant jurisprudence from Oklahoma. The Indiana Supreme Court, when considering whether a community action agency was a political subdivision, noted explicit statutory language which provided that a private, non-profit community action agency was to be treated as a political subdivision for purposes of the tort claims act. See LCEOC, Inc.,735 N.E.2d at 208. Using this definition, it found that the entity was a political subdivision for purposes other than tort claims. Id. After the decision, the Indiana Legislature removed the explicit inclusion of a community action agency as a political subdivision. See Ind. Code Ann. § 34-6-2-110 (West 2003). Likewise, here the Oklahoma Legislature has not denominated a community action agency as a political subdivision generally, but has given a community action agency the monetary protection of the Tort Claims Act only in one narrow circumstance, when operating a Head Start program. 51 O.S. Supp.2002, § 152[51-152](8)(n). If the Legislature had wanted to include community action agencies as political subdivisions, it would have done so. It chose not to do so.
¶ 29 Because a community action agency is not a "subdivision," employment or consulting by a current legislator with a community action agency would not violate Article V, Section 23 of the Oklahoma Constitution, which prohibits a current legislator from having an interest in a contract with a subdivision.
C. A legislator employed by a community action agency does nothold another office proscribed by 51 O.S. Supp. 2002, § 6[51-6].
¶ 30 According to 51 O.S. Supp. 2002 § 6[51-6], a current legislator may not hold another office, i.e., a "public office." The Oklahoma Supreme Court defined "public office" in Guthrie Daily Leader v. Cameron, 41 P. 635, 636 (Okla. 1895). The court was asked whether a section of the appropriations act requiring State entities to use a specific printer created a public office. Id. The court held that although the position of a public printer was created by statute, the position was not a public office because the position failed to embrace all the elements of a public office. Id. at 637-38. Ordinarily, agencies are not public offices unless designated by the Legislature. Id. However, whether an agency or position is a public office is determined by the nature of the office, not the title. Id. Therefore, the court defined a public office and identified the elements that were applicable in deciding the question.
¶ 31 The court defined a public office as "the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised for the benefit of the public." Guthrie Daily Leader, 41 P. at 636
(citation omitted). The individual invested with such power is a public officer. Id. The distinguishing characteristic between an office and an employment is the delegation of some sovereign functions of the government. Id.
 The officer is distinguished from the employe[e] in the greater importance, dignity, and independence of his position; in being required to take an official oath, and, perhaps, to give an official bond; in the liability to be called to account, as a public offender, for misfeasance or nonfeasance in office; and usually, though not necessarily, in the tenure of his position.
Id. (quoting People ex rel. Throop v. Langdon, 40 Mich. 673
(Mich. 1879)).
¶ 32 The court recognized that a person may be employed under a contract with the State without becoming an officer. Id. at 638. An employee is not an officer unless he or she has a continuing duty that is defined by rules prescribed by the government. Id.
¶ 33 The court held that the public printer was not a "public office" because "[t]he legislature has not designated the place an `office.' No oath or bond is required. No term of duration is fixed. No certificate of appointment or commission is provided for. No qualifications are prescribed, and none of the sovereign functions of the government are delegated." Guthrie Daily Leader,41 P. at 637-38.
¶ 34 The same factors are present in the case of community action agencies. Although the agencies are created by statute, the Legislature did not specifically designate the agencies as public offices. 74 O.S. 2001, § 5034[74-5034]. The Legislature does prescribe basic qualifications for the members of the board of directors for a community action agency and also prescribes the duties of the board. Id. §§ 5037, 5040. However, the powers conferred on the board of directors are comparable to the powers of a corporation, not the sovereign powers of the government. Without sovereign governmental powers, a community action agency does not qualify as a public office.
¶ 35 Because a community action agency is not a public office, the executive director of such an agency does not qualify as a State officer. Moreover, the executive director of an agency is not required to take an oath, unlike the officers and employees of designated State agencies. See, e.g., Okla. Const. art. XV, §1; 51 O.S. 2001, § 2[51-2]. Further, neither the Legislature nor the Department of Commerce has set forth any rules under the Oklahoma Administrative Procedures Act regarding the tenure of an executive director or prescribing qualifications and duties. See OAC 150:1-1-1-90-1-11. The position of executive director is not a public office and a legislator may hold such a position without violating 51 O.S. Supp. 2002, § 6[51-6].
 ¶ 36 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. A State legislator may, during his or her term of office, serve as a consultant or executive director of a community action agency without violating the provision of Article V, Section 23 of the Oklahoma Constitution which prohibits appointment to an office "in the State," because employment with a community action agency is not an office "in the State." Id.
 2. A State legislator may, during his or her term of office, serve as a consultant or executive director of a community action agency without violating the provision of Article V, Section 23 of the Oklahoma Constitution which prohibits a legislator from having an interest in a contract with the State, a county or other subdivision during his or her term because a community action agency is neither the "State" nor any "other subdivision" under Oklahoma law. Id.
 3. A State legislator may, during his or her term of office, serve as a consultant or executive director of a community action agency without violating 51 O.S. Supp. 2002, § 6, because neither position in a community action agency is an "office under the laws of the state" as that phrase has been interpreted under Oklahoma law.[12] Id.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 GRETCHEN GROVER HARRIS Assistant Attorney General
[1] The Ethics Commission's Rules, set forth at 74 O.S. 2001 
Supp. 2002, ch. 62, app., R. 257:1-1-1-30-1-9, are to be interpreted by the Ethics Commission and, thus, to the extent Rules of the Ethics Commission bear upon the ultimate answer to question one, that question should be posed to the Ethics Commission for interpretation.
[2] Section 6 was amended in the 2003 First Regular Session of the Forty-Ninth Legislature; however, the amendment is not germane here. See 2003 Okla. Sess. Laws ch. 387, § 4.
[3] A number of exceptions are provided in the section. None are relevant here.
[4] See also 2003 Okla. Sess. Laws ch. 304, § 1 (amending 51O.S. Supp. 2002, § 152[51-152]); however, this amendment is not germane here.
[5] A legislator is a public officer under 51 O.S. Supp. 2002, § 6[51-6]. See A.G. Opin. 80-172, 293 (quoting Oklahoma City v.Century Indem. Co., 62 P.2d 94, 97 (Okla. 1936)) in which the court articulated the elements of a public office: "(a) The specific position must be created or authorized by law; (b) there must be certain definite duties imposed by law on the incumbent; and (c) they must involve the exercise of some portion of the sovereign power. . . ." Id. Even a brief review of Article V, Sections 10A-45 of the Oklahoma Constitution demonstrates that the position of a legislator is authorized by law, that there are definite duties imposed on the legislator and that the legislator, in carrying into effect the Constitution, exercises a portion of the sovereign power. See id.
[6] Article V, Section 23 of the Constitution contains the phrase "in the State." Id. To the extent this phrase might be construed to mean that an office in a political subdivision is a "State office," see Part II(B), which discusses whether a community action agency is a political subdivision and concludes that it is not, and thus, not a State office.
[7] We use a definition from another statute under the principles of statutory construction unless a contrary intention appears. 25 O.S. 2001, § 2[25-2]. No contrary intention appears here.
[8] The term "agency" is also defined in the Governmental Tort Claims Act. "`Agency' means any board, commission, committee, department or other instrumentality or entity designated to act in behalf of the state or a political subdivision[.]" 51 O.S.Supp. 2002, § 152[51-152](2). However, simply because the term "agency" is used in the name of an entity, public or private, that functions in the community, that entity is not, per se, the State. The substantive analysis must still be carried out.
[9] Judicial authority from other jurisdictions sometimes distinguishes between "public" and "private" non-profit community action agencies in determining whether an agency is "the state" or a "political subdivision"; sometimes the authority makes no distinction. Whether a community action agency in Oklahoma is "public" or "private" in light of the relevant statutes enacted by the Oklahoma Legislature is not determinative here.
[10] See Pub. Serv. Co.v. Northwest Rogers County Fire Prot.Dist., 675 P.2d 134, 136-37 (Okla. 1983); Armstrong v. SewerImprovement Dist. No. 1, 199 P.2d 1012, 1014-15 (Okla. 1948).
[11] The analysis undertaken by the Connecticut court to determine whether the community action agency was subject to its Freedom of Information Act was much more detailed than that required by the Oklahoma Open Records Act. See 51 O.S. 2001 Supp. 2002, §§ 24A.1-24A.26. Under the Oklahoma Open Records Act, a public body subject to the Act is an entity "supported in whole or in part by public funds." 51 O.S. Supp. 2002, §24A.3[51-24A.3](2). No detailed inquiry concerning all aspects of a community action agency need be made to find that the entity is a "public body" under the Open Records Act. An entity in Oklahoma may be a "public body" under the Open Records Act, but not be the "State" for other purposes. "Assuming [an entity] is a public agency for the purposes of [the Open Records Act], it does not necessarily follow that is it a governmental entity for the purposes of another [statute]." LCEOC, Inc. v. Greer,735 N.E.2d 206, 209 (Ind. 2000).
[12] You also asked, if the answer was yes to your first question, "is a community action agency required to comply withany laws or regulations or follow any process for hiring anexecutive director, and if so, what are those laws and/orregulations?" Letter from Mike Reynolds, Oklahoma State Representative, to W.A. Drew Edmondson, Attorney General of Oklahoma (Aug. 11, 2003) (on file with the Oklahoma Attorney General's office). While there are numerous laws, both state and federal, which govern hiring practices, we assumed that you mean laws which would apply uniquely to your posited hypothetical, other than a statutory provision which requires the Board of Directors of a community action agency to appoint and dismiss the executive director. 74 O.S. 2001, § 5037[74-5037](1).