## OKLAHOMA CITY v. CENTURY INDEM-NITY CO.

No. 26884.   Oct. 6, 1936.

Rehearing Denied Nov.. 10, 1936.

(Syllabus.)

Harlan Deupree, Municipal Counselor, and A. P Van Meter, Asst. Municipal Counselor, for plaintiff in error.

Hal C. Thurman and Harold C. Thurman, for defendant in error.

RILEY, J.  Plaintiff city sued K. D. Harris and the Century Indemnity Company to recover on a surety bond in the principal sum of $1,000, given by Harris as deputy city clerk of the city of Oklahoma City.

The bond sued upon designates the parties as K. D. Harris, "hereinafter called employee", as principal; the Century Indemnity Company, the surety, and city of Oklahoma City, the employer, and binds the principal and surety to pay the city the penal sum of $1,000. It then recites:

"Whereas, the employee has been appointed to the position of Deputy City Clerk, in the service of the employer, and has applied to the Century Indemnity Company for this bond;"

"It is hereby covenanted and agreed that the surety (for and in consideration of a premium based upon an annual rate of 50 cents per One Hundred Dollars of Suretyship paid or to be paid to it by the Emp oyer), hereby binds itself to pay to City of Oklahoma City (as Employer) such pecuniary loss as the Employer shall sustain of money or other personal property (including that for which the employer is legally liable) through the Fraud, Dishonesty, Forgery, Theft, Embezzlement. or Wrongful Abstraction, on the part of the Emp'oyee directly or in connivance with others while in the performance of his dutirs in any position in the service of the Employer, during the period commencing with the 16th day of July, One Thousand Nine Hundred and twenty-eight, at Twelve O'clock Noon, Standard time."

Then follow certain provisions relative to the application of any recovery of any loss, other than reinsurance or coinsurance. Then the following:

"Second. Upon the discovery by the Employer of any loss, the Employer shall within ten days after such discovery de iver notice thereof to the Surety at its Home Office in Hartford, Conn., and within three months after such discovery the Employer sha'l file with the Surety at its Home Office, a written statement of claim giving particulars of such loss. The surety shall have Two months after claim has been presented in which to verify and pay same, during which time no legal proceedings shall be brought against the surety as to the claim, nor at all as to that c'aim after the expiration of Sixteen months from the date of discovery of loss. If any limitation embodied in this bond is prohibited by any law controll'ng the construction thereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law."

Then follows a provision for terminating

the bond by written notice by the employer to the surety or 30 days' written notice by the surety to the employer, or by the retirement of the employee from the service of the employer, or upon discovery of any loss through the employee.

And then:

"Fourth. The surety shall be liable for those losses only which shall be discovered during the term the bond is in force, or, within fifteen months after the termination thereof."

The bond was dated July 16, 1928.

The amended petition, after certain formal allegations, alleged: That said K. D. Harris entered into the employment of the city on or about July 16, 1928, and remained continuously in said employment in such capacity to and including December 31, 1931, at which time he left the employ of said city. The petition then alleged that there had been a breach of the conditions of said bond in

"That during the time that said defendant Harris was so employed by said city, he collected certain sums of money belonging to said city and paid to him as deputy city clerk in the special assessment department of said city for which he failed, neglected and refused to account, and in certain instances, though taxes were not in fact paid to said city, said defendant Harris caused the taxes to be shown as paid upon the tax records of said city and upon the records in the office of the county treasurer of Oklahoma county upon certain properties which are now in the hands of innocent purchasers so that it is not possible to correct said tax records, and that in these manners said defendant Harris caused loss and damage to this plaintiff in the sum of $2,164.72. * * *"

It is then alleged in substance that a full, true, and correct detailed statement of the losses was prepared and served upon the surety, and that on August 14, 1933, a statement and notice of claim was sent by registered mail to the surety. Then follow some 14 separate paragraphs alleging separate acts of fraud, embezzlement, etc., making up the aggregate sum of $2,164.72, some of which were false entries on the books of the city pertaining to the payment of special improvement assessments against property owned by Harris whereby the books of the city and of the county treasurer were made to show paid certain special assessments or installments thereof against said property, when in truth and in fact no such payments had been made, and that loss to the city arose by the transfer of said property to innocent purchasers. Other items were in

substance that Harris had collected paving or other special assessments from the owners of property, and failed and refused to account for same. The alleged facts as to each item were pleaded in great detail, including the manner in which Harris had managed to conceal his wrongful acts until a complete audit of his accounts was made.

As to the discovery of such matters, the petition alleged:

"Plaintiff further alleges that it was not until on or about December 14, 1931, that any of the officers, agents or employees of the plaintiff had reason to believe that any of the matters described in said paragraphs numbered VI to XIX, inclusive, had transpired. That on or about said last referred to date, M. Lowenstein complained to the city auditor about not receiving proper credit for certain payments made to said K. D. Harris, and other parties, not known to this plaintiff, also complained and that the city auditor, upon receiving said complaints, and having these matters brought to his attention, conveyed such information to the city manager. That on or about December 14, 1931, as soon as possible after receiving said information, the city manager instructed the city auditor to hire two additional employees and to proceed with an audit of the books and accounts and records in the office of the city clerk and in the office of the county treasurer. This audit was conducted as rapidly as possible and was completed on or about August 1, 1933, and delivered to the city council on August 1, 1933. * * * That notice and claim was filed by the city attorney with the Century Indemnity Company as soon as possible after the amount of the losses was definitely ascertained and fully discovered and within the time set forth in said bond in the manner as hereinbefore alleged."

The petition further alleged in substance that the bond sued upon was required by sections 6239 and 6353, O S. 1931, and that the city council required Harris to execute said bond in order that said section might be complied with and that the bond was executed for the purpose of meeting the requirements of said sections. The petition finally alleged in substance that if the statement and notice of claim were not filed within the time and in the manner required by the bond, the defendant waived the requirement of the bond on August 17, 1933, by denying liability under the bond on the ground that the losses had not been discovered within 15 months from the termination of said bond, in a letter addressed to the city's counselor. as follows:

"Our bond file discloses that the bond terminated January 1, 1931, as the city clerk notified us that Mr. Harris' employment had terminated at that time.

"Your attention is called to provision 4 of the bond. Claim has not been brought within 15 months from the termination of the bond, and, hence, this company is without liability on account of our bond."

Defendant Harris was not served with summons and did not appear.

The defendant Century Indemnity Company filed special and general demurrers, which were sustained. Plaintiff elected to stand upon the amended petition, and the court entered an order dismissing the cause and plaintiff appeals.

Counsel in their briefs apparently agree that the principal question involved is whether the bond sued upon is a statutory bond or a common-law bond. If it is a statutory bond, then the provisions therein requiring discovery of loss, notice of such discovery, etc., are surplusage and plaintiff is entitled to recover, though it be granted that plaintiff did not discover the loss within 15 months after the termination of the bond and did not give the notice of loss within the time required by the bond. And: "If the bond is not a statutory bond, whether the petition alleges discovery within the time provided by the bond, and that notice was given as required by the bond."

We first consider the question whether the bond sued upon is a statutory bond.

Plaintiff contends that the bond is one required by section 6353, O. S. 1931, and also that the bond in question was required by section 6239, O. S. 1931. If by either section, or both, the bond is required, it is a statutory bond.

Within section 6353, supra, is the following:

"The council shall require all city officers, elected or appointed, to take and subscribe an oath of office, and to give bonds for the faithful discharge of their duties."

Section 6239, supra, makes installments of special assessment for certain public improvements, payable in the first instance to the clerk of the city or town, and makes it his duty to give proper receipts for such payments, and credit the same upon the street assessment rolls, and then provides:

"The city or town clerk shall be required to execute a good and sufficient bond, with sureties, and in an amount to be approved by the governing body, payable to the city or town, conditioned for the faithful performance of the duties enjoined upon him by this act as collector of said assessments."

As to the city clerk, there can be no doubt that a bond is required under section 6353, supra, and possibly an additional or special bond under section 6239, supra, or at least the bond required by section 6353, supra, should contain the specific conditions set forth in section 6239, when given by a city clerk.

The question still remains whether the position of deputy city clerk is an office within the meaning of section 6353, supra. If so, the bond sued upon is a statutory bond.

Generally speaking, one of the requisites of an office is that it must be created by a constitutional provision or it must be authorized by some statute. 46 C. J. 930.

Many authorities hold that the chief elements of a public office are:

(a) The specific position must be created or authorized by law; (b) there must be certain definite duties imposed by law on the incumbent; and (c) they must involve the exercise of some portion of the sovereign power. "A position which has these three elements is presumably an 'office', while one that lacks any of them is a mere employment." Windsor v. Hunt (Ariz.) 243 P. 407.

In 22 R. C. L. 583, par. 298, it is said:

"The business and object of a deputy is to perform the duties of his principal. Although in some jurisdictions it is held that a deputy is not a public officer, the weight of authority appears to be the other way, especially where the appointment is permanent and not merely casual for a special service, and where he is required by statute to take an oath of office."

The rule is stated in 46 C. J. 1062, as follows:

"The authority given by law to a ministerial office is given to the incumbent of the office, and a deputy is ordinarily regarded as the agent or servant of his principal. Where, however, provision is made by a statute for the position of deputy, such deputy is regarded as a public officer; but where a statute confers a power only to be exercised for, and in the name of, the principal, a deputy is not an officer."

In Wells v. State, 175 Ind. 380, Ann. Cas. 1913C, 86, the position of deputy county auditor is held to be a public office.

In State ex rel. Stage v. Mackie, 82 Conn. 398, it is held that the position of deputy building inspector is a public office which may not be created by a city council without authority from the State Legislature or charter, and that authority to create the office of building inspector does not carry with it authority to provide for a deputy building inspector.

The rule that where provisions are made by statute for the position of deputy, such

deputy is regarded as a public officer, is supported by numerous authorities. Wells v. State, supra; Dewey v. Luzerne Co., 74 Pa. Super. 300; State v. Slagle, 115 Tenn. 336; State v. Mackie, supra; Southern Surety Co. v. Kinney, 74 Ind. App. 205, 127 N. E. 575. In the latter case it is held:

"A deputy county treasurer appointed under Burns' Ann. St. 1914, sec. 9478, providing that the treasurer may appoint one or more deputies, and may take from them bond and surety, is a public officer, notwithstanding under sections 9158-9160, the treasurer is responsible for all of the official acts of his deputy."

And:

"Under Burns' Ann. St. 1914, section 9478, authorizing the county treasurer to appoint a deputy, and to take bond and surety, a bond exacted by the treasurer of his deputy is an official bond, whether the statute · be deemed permissive or mandatory."

Other contentions made by defendant in error are met and answered in that case.

An office or position which is created by municipal ordinance pursuant to power conferred by the Legislature upon the governing body is just as much created by law as if the Legislature itself had acted in the premises. 32 C. J. 596; Blinn v. Hassman, 162 Okla. 1, 18 P. (2d) 881.

Municipal offices can only be created by legislation. This may be either immediate, when done by the State Legislature, or delegated, as when the municipal corporation is expressly empowered by charter or general law to create the office for itself. 43 C. J. 598.

The authority for the creation of the office of the deputy clerk is clear. By section 15, art. 2, of the special charter of the city of Oklahoma City, it is provided:

"The board of commissioners (now mayor and council) * * * may create such other offices * * * necessary to the proper and efficient conduct of the affairs of the city."

It appears that such office or position was created by Ordinance No. 2033, adopted September 24, 1918, though the ordinance was not pleaded in the amended petition. That such position did exist is recognized by the recital in the bond, viz., "Whereas, the employee has been appointed to the position of deputy city clerk in the service of the employer and has applied to the Century Indemnity Company for the bond." We conclude that the position of deputy city clerk was an office; that Harris was an officer and that the bond given by him, and sued upon

herein, is a statutory bond. Therefore the provisions inserted in the bond relative to discovery of losses, notice of such discovery, and presentation of claim within certain specified time are surplusage and are to be disregarded. Lowe v. City of Guthrie, 4 Okla. 287, 44 P. 198; Western Cas. & Guar. Ins. Co. v. Board Co. Com'rs, 60 Okla. 140, 159 P. 665; Duke v. Nat'l Surety Co. (Wash.) 227 P. 2; Southern Surety Co. v. Cochise Co. (Ariz.) 233 P. 897; Washington Co. v. Stephens (Idaho) 267 P. 225; Southern Surety Co. v. Kinney (Ind. App.) 127 N. E. 575; Yeargain v. Board of Co. Com'rs, 90 Okla. 38, 215 P. 619.

We consider it unnecessary to discuss the question whether the discovery was in fact made within 15 months from the termination of the bond and whether the notice given was within the time required by the bond as alleged in the petition.

In support of the order sustaining the demurrer defendant contends that the petition is insufficient because it alleges only false entries on the books as defaults on the part of the deputy clerk, and that mere entries on the books showing assessments paid, when in fact they were not paid, did not relieve the property from special assessments, and therefore the city suffered no loss.

The petition does allege such matters as to certain counts, but we consider it unnecessary, for the purposes of this case, to determine whether as to such counts the petition stated a cause of action, since there are allegations of actual receipt of money and failure to account therefor in other counts sufficient to state a cause of action on the bond. If these amount to as much as the penalty of the bond, it is immaterial whether the city suffered any loss in the transactions in the other counts.

It is also contended that the petition fails to state a cause of action because the city clerk himself is required to give a bond covering the collection of special assessments, and the city is fully protected thereunder.

With this contention we cannot agree. The remedy of the city is merely cumulative. It might be that the bond of the city clerk would prove inadequate, or the surety become insolvent. The city would have the right to look to either bond or both. The only way the bond of the city clerk could absolve the bond of the deputy clerk would be by payment of the loss sustained by reason of the default of the deputy. In that

event there would be a complete defense, but that would be purely defensive and a matter for defendant to plead.

The amended petition as it stood when the general demurrer was sustained stated a cause of action.

The order sustaining the demurrer and judgment of dismissal is reversed and the cause is remanded for further proceedings.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, WELCH, CORN, and GIBSON, JJ., concur. PHELPS, J., absent.