Dear Senate, Fisher
¶ 0 The Attorney General has received your letter asking for an official opinion addressing the following question:
May the chief executive officer of the Oklahoma IndustrialFinance Authority also serve as the President of the OklahomaDevelopment Finance Authority?
¶ 1 The Oklahoma Industrial Finance Authority (OIFA) is an agency authorized by the Oklahoma Constitution, Article X, Section 33A. The enabling statutes of the OIFA are found at 74O.S. 851 (1981) et seq., as amended. The OIFA was created to help foster and promote industrial development and provide additional employment within Oklahoma. 74 O.S. 852 (1981).
¶ 2 The Oklahoma Development Finance Authority (ODFA) is a state beneficiary public trust formerly known as the Oklahoma Development Authority. By meeting the requirements of 74 O.S.5062.2(C) (1990), it became the ODFA and is now governed by the provisions of the Oklahoma Development Finance Authority Act, 74O.S. 5062.1 (1990) et seq. See, A.G. Opin. No. 89-021. The ODFA is also charged with the task of promoting and fostering industrial and agricultural development within Oklahoma. 74 O.S.5062.2 (1990).
¶ 3 An examination of the enabling statutes of each agency and of Article X, 33A of the Oklahoma Constitution reveals no explicit prohibition against a chief executive officer of the OIFA also serving as the President of the ODFA, but there are several general prohibitions under Oklahoma law which must be examined to determine if such dual service is permissible.
 I.
¶ 4 The first provision of Oklahoma law which might act to prohibit the dual service of one individual as both chief executive officer of the OIFA and as President of the ODFA is the dual-office holding prohibition found in 51 O.S. 6(A) (1990). The general prohibition against dual-office holding; found in 51O.S. 6 provides in pertinent part:
 Except as may otherwise be provided, no person holding an office under the laws of the state and no deputy of any officer so holding any office, shall, during his term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the state.
¶ 5 The dispositive question is whether either the position of chief executive officer of the OIFA or that of President of the ODFA is a public office for purposes of 51 O.S. 6 (1990), as both positions must be deemed "offices" for the prohibition to apply. The term office was interpreted in Oklahoma City v.Century Indemnity Company, 62 P.2d 94 (Okla. 1936). The Court held as follows:
 (a) The specific position must be created or authorized by law; (b) there must be certain definite duties imposed by law on the incumbent; and (c) they must involve the exercise of some portion of the sovereign power[.]
62 P.2d at 97.
¶ 6 An examination of the enabling statutes of the OIFA makes it clear that the chief executive officer of the OIFA is not an "office" for the purposes of Oklahoma's dual-office holding prohibition but rather must be viewed as an internally created, administrative position. Title 74 O.S. 854 (1990) creates the Board of Directors of the OIFA and defines its membership. 74O.S. 854 is noticeably silent regarding the hiring of any subordinate officers but speaks instead only to the membership of the Board and its election of officers.
¶ 7 Title 74 O.S. 855 (1990), which describes the powers of the OIFA, is likewise silent regarding the hiring of any specific subordinate officers or the creation of any specific positions.74 O.S. 855(k) simply vests the Board with the general authority "to appoint officers, agents, and employees, and to prescribe their duties and to fix their compensation, within the limitations prescribed by laws." Even if 855(k) could be said to have "authorized" the position of a chief executive officer under the criteria of Century Indemnity, it is apparent, nevertheless, that no duties have been delineated by statute for any position subordinate to the Board itself, nor is there any indication that any position created pursuant to 74 O.S. 855(k) would involve the exercise of sovereign power.
¶ 8 The bare grant of authority to the Board to appoint officers, agents, and employees, cannot be interpreted to make any position created by the Board of OIFA an "office" for the purposes of Oklahoma's dual-office holding prohibition. A chief executive officer for OIFA, then, does not hold a public office. That determination effectively ends the dual-office holding inquiry; for both positions must be "offices" for the dual-office holding prohibition to apply. Title 51 O.S. 6 (1990), therefore, would not prohibit the chief executive officer of the OIFA from holding the office of President of the ODFA.
 II.
¶ 9 There are two other provisions of Oklahoma law which might operate to prohibit the dual service of one individual as both chief executive officer of the OIFA and as President of the ODFA. These remaining provisions address the ability of an individual to fulfill the duties of both positions and to do so with independence of judgment. First, there is the Constitutional mandate, found in Article II, Section 11 of the Oklahoma Constitution, which requires that:
 Every person elected or appointed to any office or employment of trust or profit under the laws of the State, or under any ordinance of any municipality thereof, shall give personal attention to the duties of the office to which he is elected or appointed.
¶ 10 There is also the mandate of 74 O.S. 4241(6) (1990) which prohibits any state employee from accepting or soliciting "other employment which would impair his independence of judgment in the performance of his public duties."
¶ 11 Questions arising under these provisions can seldom be answered as a matter of law but often depend instead upon factual determinations specific to each circumstance. Here, for instance, it cannot be said, as a matter of law, that because one individual serves as both a chief executive officer of the OIFA and as President of the ODFA that, by or through that dual service, he would be unable to give personal attention to the duties of both positions or that his independence of judgment would be compromised.
¶ 12 For the purposes of this opinion, we assume that where one individual serves in both capacities, as chief executive officer of the OIFA and as President of the ODFA, that he must do so with the full knowledge and willingness of the members of the Boards of both agencies. Where there is such full disclosure and willingness, it is clear that those most familiar with the factual circumstances and the actual demands of the two positions, do not anticipate that an honest and capable individual would find it impossible to give sufficient personal attention to each of the two positions and could do so without having his judgment impaired in his service of either position.
¶ 13 It is this same dependence upon factual circumstances, our presumption of full disclosure to each Board, and the willingness of the Board members from the OIFA and the ODFA to employ the same individual in both positions, that makes any discussion here of the possibility of conflicts of interest both impossible and unnecessary. One could, perhaps, conceive of factual circumstances under which the dual service of one individual as both chief executive officer of the OIFA and as President of the ODFA might generate a conflict of interest as prohibited under Oklahoma law, and any individual serving in such a dual capacity should be vigilant in his efforts to anticipate and to avoid any possible conflicts. But the members of the Boards of the OIFA and the ODFA are in the best position to make the factual determination of whether conflicts of interest are likely to arise. We cannot say, as a matter of law, that the possibility of conflicts of interest prohibit the dual service of one individual as both chief executive officer of the OIFA and as President of the ODFA.
¶ 14 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. The Oklahoma Industrial Finance Authority (OIFA) isauthorized by 74 O.S. 855(k) (1990) to hire subordinates. Thechief executive officer of the OIFA, hired pursuant to thissection is not an "officer" for purposes of the dual officeholding prohibition contained in 51 O.S. 6 (1990). Therefore,there is no prohibition, as a matter of law, pursuant to thisstatute against this individual also serving as the President ofthe Oklahoma Development Finance Authority authorized by 74O.S. 5062.7 (1990).
 2. Conflicts of interest could possibly arise if oneindividual serves as the chief executive officer of the OklahomaIndustrial Finance Authority (appointed under the generalauthority to hire subordinates found in 74 O.S. 855(k)(1990)), and also as the President of the Oklahoma DevelopmentFinance Authority (created by 74 O.S. 5062.7 (1990)).However, where the governing boards of both entities want thesame individual to serve in both capacities, it cannot bedetermined as a matter of law that there is a violation ofeither 74 O.S. 4241(6) (1990) or Okla. Const. Article II,Section 11, which require state officers and employees to givefull attention to their positions.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
REBECCA RHODES ASSISTANT ATTORNEY GENERAL