Dear Director Burt:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Pursuant to 47 O.S. Supp.2006, § 156.1(B)(2) are certain employees of the Alcoholic Beverage Laws Enforcement ("ABLE") Commission permitted to use a state-owned vehicle to provide transportation between the employee's residence and the assigned place of employment, and between the residence and any location other than the assigned place of employment to which the employee travels in the performance of the employee's official duty?
 2. Is it a violation of 51 O.S. Supp.2006, § 6, which prohibits dual office holding, for an ABLE employee who holds a commission as an ABLE agent and serves as a Law Enforcement Programs Administrator and part-time hearing officer, to also serve on a part-time hourly contractual basis as a municipal assistant attorney?
Your first question concerns 47 O.S. Supp.2006, § 156.1, which governs the use of state-owned motor vehicles for private use. You ask whether certain employees of the ABLE Commission are entitled to use state-owned vehicles to provide transportation between the employees' residences and the assigned place of employment, and between the residences and any location other than the assigned place of employment to which the employees travel in the performance of their official duty. The specific employees within the ABLE Commission about whom you inquire and information supplied by you about their positions are:
• Director (not CLEET[1] certified)
• Assistant Director (commissioned agent and CLEET certified)
• Deputy Director (not a commissioned agent and not CLEET certified)
• Law Enforcement Programs Administrators
 • Chief Agent (commissioned agent and CLEET certified)
 • Director of Administrative Services, Director of Human Resources who serves in a part-time capacity as a hearing officer (commissioned agent and CLEET certified)
 • Director of Budget and Finance (not a commissioned agent and not CLEET certified)
• ABLE Agents I, II, III and V (commissioned agents and CLEET certified)
• ABLE Agent IV (commissioned agent and CLEET certified)
 I. THE STATUTE GOVERNING THE PRIVATE USE OF STATE-OWNED VEHICLESAUTHORIZES A LAW ENFORCEMENT OFFICER EMPLOYED BY THE ABLE COMMISSION TODRIVE A STATE-OWNED VEHICLE BETWEEN THE LAW ENFORCEMENT OFFICER'SRESIDENCE AND THE ASSIGNED PLACE OF EMPLOYMENT, AND BETWEEN THERESIDENCE AND ANY LOCATION OTHER THAN THE ASSIGNED PLACE OF EMPLOYMENTTO WHICH THE EMPLOYEE TRAVELS IN THE PERFORMANCE OF THE EMPLOYEE'SOFFICIAL DUTY.
The statute governing the use of state-owned vehicles in pertinent part provides:
 A. It shall be unlawful for any state official, officer, or employee, except any essential employees approved by the Governor and those officers or employees authorized in subsection B of this section, to ride to or from the employee's place of residence in a state-owned automobile, truck, or pickup, except in the performance of the employee's official duty, or to use or permit the use of any such automobile, truck, ambulance, or pickup for other personal or private purposes. Any person convicted of violating the provisions of this section shall be guilty of a misdemeanor and shall be punished by a fine of not more than One Hundred Dollars ($100.00) or by imprisonment in the county jail for a period not to exceed thirty (30) days, or by both such fine and imprisonment, and in addition thereto, shall be discharged from state employment.
 B. 1. Any state employee, other than the individuals provided for in paragraph 2 of this subsection . . . who receives emergency telephone calls regularly at the employee's residence when the employee is not on duty and is regularly called upon to use a vehicle after normal work hours in response to such emergency calls, may be permitted to use a vehicle belonging to the State of Oklahoma to provide transportation between the employee's residence and the assigned place of employment, provided such distance does not exceed seventy-five (75) miles in any round trip or is within the county where the assigned place of employment is located. Provided further, an employee may be permitted to use a state-owned vehicle to provide temporary transportation between a specific work location other than the assigned place of employment and the employee's residence, if such use shall result in a monetary saving to the agency, and such authorization shall not be subject to the distance or area restrictions provided for in this paragraph. Authorization for temporary use of a state-owned vehicle for a specific project shall be in writing stating the justification for this use and the saving expected to result. Such authorization shall be valid for not to exceed sixty (60) days. Any state entity other than law enforcement that avails itself of this provision shall keep a monthly record of all participating employees, the number of emergency calls received, and the number of times that a state vehicle was used in the performance of such emergency calls.
 2. Any employee of the Department of Public Safety, Oklahoma State Bureau of Narcotics and Dangerous Drugs Control, Oklahoma State Bureau of Investigation, Alcoholic Beverage Laws Enforcement Commission, Oklahoma Horse Racing Commission, Office of the Inspector General within the Department of Human Services or Office of the State Fire Marshal, who is a law enforcement officer or criminalist, Public Information officer, Special Investigator or Assistant Director of the Oklahoma State Bureau of Investigation, or any employee of a district attorney who is a law enforcement officer, may be permitted to use a state-owned vehicle to provide transportation between the employee's residence and the assigned place of employment and between the residence and any location other than the assigned place of employment to which the employee travels in the performance of the employee's official duty.
 . . . .
 C. The principal administrator of the state agency with which the employee is employed shall so designate the employee's status in writing or provide a copy of the temporary authorization to the Governor, the President Pro Tempore of the Senate, and the Speaker of the House of Representatives. Such employee status report shall also be provided to the State Fleet Manager of the Division of Fleet Management if the motor vehicle for emergency use is provided by said Division.
47 O.S. Supp.2006, § 156.1 (emphasis added). The provisions of this section do not apply to "statewide elected commissioners." Id. § 156(G).
Section 156.1 has been amended several times in recent years, with the most recent amendment adding the language "or criminalist, Public Information officer, Special Investigator or Assistant Director of the Oklahoma State Bureau of Investigation" to subsection (B)(2).See 2003 Okla. Sess. Laws ch. 456, § 3(B)(2). That amendment also correspondingly changed the term "law enforcement officers" to "individuals" in Section 156.1(B)(1) to acknowledge that the exception applies to certain employees of the Oklahoma State Bureau of Investigation who are not law enforcement officers. See id. § 3(B)(1).
We begin our analysis recognizing there is a general prohibition in Oklahoma law against state employees using state-owned vehicles for personal use. By its terms, Section 156.1(A) of Title 47 provides that, absent certain statutory exceptions, state employees are prohibited from riding to or from their place of residence in a state-owned vehicle except in the performance of their duties.
The Legislature has carved out limited exceptions which can be categorized into four areas: (1) essential employees approved by the Governor; (2) employees entitled to authorization for temporary use of state vehicles; (3) state employees who receive emergency telephone calls regularly at their residence and are regularly called upon to use a vehicle after normal work hours in response to such emergency calls; and (4) employees of certain state agencies who are law enforcement officers and other designated employees of certain state agencies.See 47 O.S. Supp.2006, § 156.1. In all situations the law requires that the "principal administrator" of the state agency with which the employee is employed must "designate the employee's status in writing or provide a copy of the temporary authorization to the Governor, the President Pro Tempore of the Senate, and the Speaker of the House of Representatives." Id. § 156.1(C).
You do not state in your request letter that the ABLE Commission has any essential employees who have been approved by the Governor to drive state-owned vehicles to or from the employee's residence.[2] You also do not ask about authorization for temporary transportation.See n. 2. Therefore, these exceptions will not be addressed in response to your inquiry. You state in your request letter that although the ABLE Commission employees about whom you inquire are available to be called at their residences "24 hours a day in case of an emergency," none are "regularly" called for emergencies. See n. 2., at 2. The fact that none are "regularly" called prohibits a finding that Section 156.1(B)(1) authorizes those employees to drive state-owned vehicles to and from their residences. As no definition of the term "regularly" is included in the legislation we find that a common sense definition of the term is applicable. Riffe Petroleum Co. v. Great Nat'l Corp., 614 P.2d 576, 579
(Okla. 1980) ("In the absence of a contrary definition of the common words used in the act, we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance."). The dictionary defines "regularly" as "in a regular, orderly, lawful, or methodical way[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1913 (3d ed. 1993). "Regular" is defined as "steady or uniform in course, practice, or occurrence : not subject to unexplained or irrational variation[.]" Id. Thus, for this exception to apply, ABLE Commission employees must be called for emergencies requiring the use of vehicles on a steady, uniform basis. You acknowledge this is not so and we, therefore, have no difficulty determining this subsection does not authorize any of the employees about whom you inquire to drive state-owned vehicles from their place of employment to their private residences, or between the residence and any location other than the assigned place of employment to which the employee travels in the performance of the employee's official duty.
The portion of the statute about which you specifically inquire is Section 156.1(B)(2). That statute creates an exception from the general prohibition against private use for any ABLE Commission employee who is a law enforcement officer. We must, therefore, determine what constitutes a "law enforcement officer" in this context, keeping in mind the purpose and intent of the statute as we are required to do.McClure v. ConocoPhillips Co., 142 P.3d 390, 395 (Okla. 2006) ("Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each.") (footnote omitted); Haggard v. Haggard,975 P.2d 439, 442 (Okla. 1998) ("Statutes are to be construed in order to `champion the broad public policy purposes' that underlie them.").
 II. FOR PURPOSES OF THE STATUTORY PROVISION PERMITTING THE USE OF ASTATE-OWED VEHICLE TO PROVIDE TRANSPORTATION BETWEEN THE EMPLOYEE'SRESIDENCE AND THE ASSIGNED PLACE OF EMPLOYMENT AND BETWEEN THE RESIDENCEAND ANY LOCATION OTHER THAN THE ASSIGNED PLACE OF EMPLOYMENT TO WHICHTHE EMPLOYEE TRAVELS IN THE PERFORMANCE OF HIS OR HER OFFICIAL DUTY, ALAW ENFORCEMENT OFFICER IS ONE WHO MAINTAINS A CURRENT CLEETCERTIFICATION AND WHOSE DUTIES INCLUDE ENGAGING IN TYPICAL LAWENFORCEMENT ACTIVITIES.
We have considered Section 156.1 of Title 47 on one prior occasion. In Attorney General Opinion 95-34 we were asked to determine whether law enforcement agents of the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control ("OBNDD") were authorized to drive state vehicles for private use. Id. at 81. We determined that because OBNDD agents are law enforcement officers they may drive state vehicles between their residences and places of employment when not on duty.Id. We further determined that an OBNDD law enforcement officer may drive a state vehicle between his or her residence and any other location provided he or she is on official duty. Id. We noted the obvious predominant purpose of Subsection 156.1(B)(2) was "to provide twenty-four (24) hour readiness to law enforcement officers who may be called upon at any time to respond to emergencies." A.G. Opin. 95-34, at 81.
Allowing the use of state vehicles for private use as authorized by Section 156.1 fulfills a public purpose. In Ethics Commission v.Keating, 958 P.2d 1250, 1258 (Okla. 1998), the Oklahoma Supreme Court considered this section in the context of the Governor's use of transportation by the Department of Public Safety. The court stated:
 But clearly, § 156.1 indicates that government transportation to a destination (private residence) for a private purpose (to go home at the end of the work-day) does in fact fulfill a public purpose, because the employee responds to emergencies from the residence. The Legislature has indicated in § 156.1 that the public receives a public benefit in having employees timely respond to emergencies related to the performance of their duties.
Id. In Attorney General Opinion 95-34 there was no question but that OBNDD agents were law enforcement officers. Thus, the public purpose of providing 24-hour readiness was fulfilled. Here, it is questionable whether certain employees about whom you inquire are law enforcement officers for purposes of fulfilling the intent of the statute.
The Oklahoma Alcoholic Beverage Control Act does not define the term "law enforcement officer." Black's Law Dictionary defines the term "law enforcement officers" as "[t]hose whose duty it is to preserve the peace." Id. at 1029. The term "law enforcement officer" and other similar terms are defined by Oklahoma statutes in a number of different contexts. The term "peace officer" is generally defined as "any sheriff, police officer, federal law enforcement officer, or any other law enforcement officer whose duty it is to enforce and preserve the public peace." 21 O.S.2001, § 99. In the context of criminalizing the act of committing assault and battery upon a police officer, the terms "police officer," "police" or "peace officer" are defined to mean "any duly appointed person who is charged with the responsibility of maintaining public order, safety, and health by the enforcement of all laws, ordinances or orders of this state or any of its political subdivisions and who is authorized to bear arms in execution of his responsibilities, including reserve force deputies, reserve municipal police officers, and tribal law enforcement officers who are commissioned pursuant to a cross-deputization agreement authorized by Section 1221 of Title 74 of the Oklahoma Statutes." 21 O.S. Supp.2006, § 648(A). The specific term "law enforcement officer" is defined in the Laser Safety Act, 21 O.S. 2001, § 1992[21-1992](C)(2), as "any police officer, peace officer, sheriff, deputy sheriff, correctional officer, probation or parole officer, emergency management employee, judge, magistrate, or any employee of a governmental agency who is authorized by law to engage in the investigation, arrest, prosecution, or supervision of the incarceration of any person for any violation of law and has statutory powers of arrest." Id.
These definitions demonstrate that every situation must be viewed on its own in determining whether an employee is a law enforcement officer. The common factor among the definitions is that the duties with which the employing agency has charged the employee must include engaging in typical law enforcement activities.
Another factor to consider in determining whether certain employees of the ABLE Commission are law enforcement officers is the certification process for police officers. The Oklahoma Legislature created CLEET to certify police and peace officers in this state. 70 O.S. Supp.2006, § 3311(A). The Legislature has defined the term "police or peace officer" for purposes of creating CLEET and authorizing the duties of that agency. Id. § 3311(D)(5). That statute provides:
 For purposes of this section, a police or peace officer is defined as a full-time duly appointed or elected officer who is paid for working more than twenty-five (25) hours per week and whose duties are to preserve the public peace, protect life and property, prevent crime, serve warrants, and enforce laws and ordinances of this state, or any political subdivision thereof; provided, elected sheriffs and their deputies and elected, appointed, or acting chiefs of police shall meet the requirements of this subsection within the first six (6) months after assuming the duties of the office to which they are elected or appointed or for which they are an acting chief; provided further, that this section shall not apply to persons designated by the Director of the Department of Corrections as peace officers pursuant to Section 510 of Title 57 of the Oklahoma Statutes.
Id.
The statutes governing CLEET contain a number of requirements for police or peace officers, including reporting from the Oklahoma State Bureau of Investigation and the Federal Bureau of Investigation that the person "has no record of a conviction of a felony or crime involving moral turpitude"; undergoing psychological evaluation approved by CLEET; possessing a high school diploma or a GED equivalency certificate; not participating in a deferred sentence agreement for a felony or a crime involving moral turpitude; attaining twenty-one (21) years of age prior to certification as a peace officer; providing proof of United States citizenship; and requiring a response from the Department of Mental Health and Substance Abuse as to whether the person has ever been involuntarily committed to an Oklahoma state mental institution.Id. § 3311(D)(2).
In addition, CLEET must determine that the person has satisfactorily completed a basic police course of not less than three hundred two (302) hours for full-time salaried police or peace officers. Id. "Subject to the availability of money, beginning July 1, 2005, the basic police course for full-time-salaried police or peace officers shall be increased to not less than three hundred eighty (380) hours."Id. Anyone who does not meet these requirements shall not be certified as a police or peace officer. Id. Thus, one who does not maintain a current CLEET certification is not considered a police or peace officer and cannot be deemed a law enforcement officer for purposes of fulfilling the intent of the Legislature in providing 24-hour readiness by using a state-owned vehicle as provided in Section 156.1(B)(2).
We therefore conclude that to qualify as an ABLE Commission law enforcement officer for purposes of Section 156.1(B)(2), an ABLE Commission employee must maintain a current CLEET certification and be charged by the ABLE Commission with the duty of engaging in law enforcement activities.
 III. EMPLOYEES OF THE ABLE COMMISSION WHO MAINTAIN A CURRENT CLEETCERTIFICATION AND ARE CHARGED WITH THE DUTY OF ENGAGING IN LAWENFORCEMENT ACTIVITIES MAY USE STATE VEHICLES FOR PRIVATE USE BETWEENTHE PLACE OF EMPLOYMENT AND THEIR RESIDENCES. WHETHER SPECIFIC EMPLOYEESMEET THIS DEFINITION IS A QUESTION OF FACT.
Having established the test for determining whether employees of the ABLE Commission are considered law enforcement officers for purposes of Section 156.1(B)(2), we now turn to the specific employees about whom you inquire. You first ask whether the current Director of the ABLE Commission may use a state-owned vehicle for private use between his residence and place of employment. You indicate that the Director is vested with peace officer powers pursuant to 37 O.S. 2001, § 512[37-512] but is not certified as an officer by CLEET. Section 512(A) provides, "[t]he members of the Commission, Director, and such agents and inspectors as the ABLE Commission appoints in writing shall have all the powers and authority of peace officers of this state for the purpose of enforcing the provisions of the Oklahoma Alcoholic Beverage Control Act." Section 512(B) further expands on those powers and states:
 The Director or any agent or inspector duly appointed, as provided in subsection A of this section, shall be authorized to arrest violators for offenses against laws of this state committed in the presence of the Director or said agents or inspectors, and further upon the request of a sheriff or another peace officer of this state or any political subdivision thereof assist in apprehension and arrest of a violator or suspected violator of any of the laws of this state.
Id.
Although the Director has the same authority as a peace officer and has been vested with the power to arrest violators, the current Director is not in fact a law enforcement officer. Having the power of a law enforcement officer for certain purposes does not give one the authority of a law enforcement officer in all matters. See generally Staller v.State, 932 P.2d 1136 (Okla.Crim. 1996) (recognizing that a commission to serve as a peace officer is issued by separate governmental entities "which have geographical limitations on their jurisdiction" and "are not empowered with statewide jurisdiction. Therefore, they cannot empower a peace officer in their employ with greater powers than they have.")Id. at 1138. See also Dunn v. New Mexico ex rel. Taxation RevenueDep't, Motor Vehicle Div., 859 P.2d 469 (N.M. 1993) (stating although the Director of the Motor Vehicles Division and other officers designated by him were invested with the power to act as peace officers for the purpose of enforcing the Motor Vehicle Code, the Director was not a law enforcement officer for purposes of the State Tort Claims Act as the vast majority of his time was spent on administrative matters);Vigil v. Martinez, 832 P.2d 405, 411-12 (N.M. 1992) (holding probation and parole officers are not "law enforcement officers" as defined by the State Tort Claims Act as officers did not devote the majority of their time to law enforcement functions).
Although he has the power to act as a peace officer, the current Director is not certified by CLEET and is not a law enforcement officer. Therefore, unless he is designated an essential employee by the Governor, he is not authorized to use a state-owned vehicle to provide transportation between his residence and the assigned place of employment and between his residence and any location other than the assigned place of employment to which he travels in the performance of his official duties.
You next ask about specific employees, some who are commissioned agents and CLEET certified, and some who are not. Those who are not commissioned agents and are not CLEET certified are the Deputy Director and the Director of Budget and Finance. Based on the information you have provided, there is no legal rationale under which the Director of Budget and Finance or the Deputy Director may use a state-owned vehicle to provide transportation between the employee's residence and the assigned place of employment, and between the residence and any location other than the assigned place of employment to which the employee travels in the performance of the employee's official duty. You note that neither of those employees are commissioned agents, nor are they CLEET certified. CLEET certification in prior years is of no relevance. They are not "law enforcement officers" as contemplated by Section 156.1(B)(2). Further, you state they are not "regularly" called for emergencies, which require the use of a vehicle. Unless these employees are designated essential employees approved by the Governor pursuant to Section 156.1(A), they are subject to misdemeanor charges for violating Section 156.1 and, if convicted, would be discharged from State employment. 47 O.S. Supp.2006, § 156.1(A).
Other employees about whom you ask may or may not be law enforcement officers for purposes of this statute, depending upon their functions within the agency. Under the analysis discussed above, the Assistant Director, Chief Agent, Director of Administrative Services, and Agents I through V may use a state-owned vehicle to provide transportation between the employee's residence and the assigned place of employment, and between the residence and any location other than the assigned place of employment to which the employee travels in the performance of the employee's official duty, if they maintain current CLEET certification and if the duties of those persons involve typical law enforcement functions.
Whether particular employees are charged with duties involving law enforcement functions is a question of fact which we cannot answer in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5). We can, however, provide some guidance as to specific employees about whom you inquire. ABLE Commission statutes provide that agents and inspectors appointed by the ABLE Commission have all the powers and authority of peace officers (37 O.S. 2001, § 512[37-512](A)), and have specific powers to arrest violators for offenses against laws of this State committed in their presence. Id. § 512(B). However, you provided information that the person currently designated as ABLE Agent Level IV serves primarily in an administrative capacity as administrative liaison to the Assistant Director over the Enforcement Division. If this person's duties are purely administrative and he or she does not engage in typical law enforcement activities, he or she would not be deemed a law enforcement officer for purposes of Section 156.1(B)(2). The same is true for the Director of Administrative Services, who serves in a part-time capacity as a hearing officer. Given the intent of the statute, employees who do not engage in law enforcement activities within the agency are not law enforcement officers for purposes of the law enforcement exception to Section 156.1(B)(2).
We must also consider the effect of Section 156.1(C) on your inquiry. That subsection requires the principal administrator of the state agency, the Director for the ABLE Commission,[3] to designate the employee's status in writing or provide a copy of the temporary authorization to the Governor, the President Pro Tempore of the Senate, and the Speaker of the House of Representatives. Under this statute, only those employees whose status you have designated as law enforcement officers may use state vehicles for private use.[4]
The use of a state-owned vehicle is not a benefit for state employees to be provided in lieu of, or in addition to, a salary increase. The intent of the Legislature in authorizing law enforcement officers and certain other designated employees to use state-owned vehicles is to provide "24-hour readiness" to certain employees who may be called upon to perform law enforcement functions. A.G. Opin. 95-34, at 81. It does not come within the purpose of the statute for an employee, even one certified by CLEET, whose assigned duties do not include law enforcement activities to have the use of a state vehicle to travel to his or her personal residence. Whether certain employees fall within this category is ultimately a question of fact depending on the nature of the assigned duties within the agency. However, we can say that those employees who either (1) do not maintain a current CLEET certification, or (2) are not charged by the agency with engaging in law enforcement activities, are prohibited from using state-owned vehicles to provide transportation between the employee's residence and the assigned place of employment, and between the residence and any location other than the assigned place of employment to which the employee travels in the performance of his or her official duty.
 IV. TITLE 51 O.S. SUPP. 2006, § 6[51-6], PROHIBITS THOSE HOLDING AN OFFICEUNDER THE LAWS OF THE STATE, OR BEING THE DEPUTY OF SUCH OFFICER, FROMHOLDING MORE THAN ONE OFFICE.
Your next question relates to the statutory prohibition against dual office holding. Title 51 O.S. Supp. 2006, § 6[51-6], which now has twenty-six exceptions, none of which are applicable here, in pertinent part provides:
 A. Except as may be otherwise provided, no person holding an office under the laws of the state and no deputy of any officer so holding any office shall, during the person's term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the state.
Id. The employee to whom you refer is a Law Enforcement Programs Administrator who serves as a part-time hearing officer and also serves on a part-time hourly contractual basis as an assistant municipal attorney. You ask whether that person may hold a commission as a CLEET-certified agent with the ABLE Commission. Your inquiry involves four separate employment positions: (1) Law Enforcement Programs Administrator, (2) part-time hearing officer, (3) part-time assistant municipal attorney, and (4) CLEET-certified agent. The part-time assistant municipal attorney position is not an ABLE Commission position; all the other positions are with the ABLE Commission. We will address each in turn as each particular position must be analyzed under the law governing it.
We begin our analysis, as with any other dual office holding inquiry, by noting that our conclusion depends on whether the positions held by the employee are "offices" as that term is defined for purposes of this prohibition. In Guthrie Daily Leader v. Cameron, 41 P. 635, 636 (Okla. 1895), the Oklahoma Supreme Court discussed the distinction between an "officer" and an "employee" in determining whether a statutorily-authorized public position was a public office. The court stated:
 A public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised for the benefit of the public. The individual so invested is a public officer.
Id. The court later set forth the chief elements of a public office inOklahoma City v. Century Indemnity Co., 62 P.2d 94, 97 (Okla. 1936), as: "(a) The specific position must be created or authorized by law; (b) there must be certain definite duties imposed by law on the incumbent; and (c) they must involve the exercise of some portion of the sovereign power. . . ." Id.
We have consistently recognized that police officers are considered officers for purposes of the prohibition against dual office holding. A.G. Opins. 06-22, at 146; 00-58, at 302; 95-48, at 130-31; 77-180, at 123-25. The rationale behind these holdings is that the position of police officer is created by law and the powers of police officers to carry firearms, execute search warrants, and make arrests and seizures involve the exercise of sovereign power. Thus, a person may not hold a position as a commissioned agent of the ABLE Commission while holding another office authorized by State law or while being a deputy of an office holder. The other positions about which you inquire are Law Enforcement Programs Administrator, part-time hearing officer and assistant municipal attorney.
Hearing officers of the ABLE Commission are discussed at 37 O.S. 2001, § 530.1[37-530.1]. That section grants the Director of the ABLE Commission "the authority to conduct an initial hearing when a hearing before the Commission is required by law. The Director may employ such hearing officers and assistants as are necessary to conduct the hearings."Id. The statute further provides that "[i]f a hearing is conducted by a hearing officer, the hearing officer shall issue a report to the Director. The report of the hearing officer shall include findings of fact and conclusions of law." Id. Section 530.1 further provides that, "[a]fter conducting a hearing or after receiving the report of the hearing officer, the Director shall issue a recommendation to the Commission." Id. Pursuant to this statute, a hearing officer is not granted the powers of an officer in the sense contemplated by the statute prohibiting dual office holding and the case law interpreting that statute. As the hearing officer merely conducts the hearing and issues a report to the Director, the hearing officer is not vested with sovereign powers as discussed in Guthrie Daily Leader, 41 P. at 636, and is not an officer for purposes of dual office holding.
Likewise, the position of Law Enforcement Programs Administrator is not an office as required by Guthrie Daily Leader. Id. That position is not a position created by law, and there are no statutory duties imposed on the Law Enforcement Programs Administrator by law. The position is one hired by the Director in furtherance of his powers to employ "personnel as are necessary to properly enforce and administer [the Act]." 37 O.S. 2001, § 509[37-509]. Thus, the Law Enforcement Programs Administrator is not an officer for the purpose of dual office holding.
We must also determine whether the position of assistant municipal attorney is one which is considered to be an office or a deputy for the purpose of dual office holding. We have not previously addressed whether municipal attorneys or assistant municipal attorneys are officers or deputies for purposes of the dual office holding prohibition. However, the courts have held, and we have recognized, that assistant district attorneys are not officers because they are not elected or appointed for a fixed term and are not assigned specific duties by statute. SeeBattiest v. State, 755 P.2d 688, 689 (Okla.Crim. 1988); Grand Jury v.Cecil, 679 P.2d 1308, 1309 (Okla.Ct.App. 1983); A.G. Opins. 01-34, at 161; 99-41, at 200-01. The court in Cecil relied upon the test first set forth in Guthrie Daily Leader, 41 P. at 637-38, finding that an assistant district attorney carries out official duties only in the name of the elected district attorney and only those duties the district attorney chooses to delegate. Cecil, 679 P.2d at 1309. The court recognized an assistant district attorney "receives no certificate of election or appointment and has no tenure or fixed term of office."Id. The court noted an assistant district attorney is not assigned specific duties by statute and "[h]is continued employment is dependent solely upon the will of the district attorney who hires him."Id.
Neither municipal attorneys nor assistant municipal attorneys are elected or appointed by statute for a given period of time. In an aldermanic form of government the municipal attorney is appointed by the mayor, subject to confirmation by the city council. 11 O.S. 2001, § 9-105[11-9-105](1). The statutes simply provide, in a council-manager form of government, that "there shall be a police department, a fire department, a department of law headed by a city attorney, and other administrative departments, offices and agencies as the council may establish." Id. § 10-119. The statutes governing the strong-mayor-council form of city government carry the same language with regard to a city attorney as those of a council-manager form of government. Id. § 11-117. Thus, the position of city or municipal attorney is not one which is elected or appointed for a given period of time. There are no statutory provisions pertaining to any form of government specifically providing for the appointment of an assistant municipal attorney.
Certain duties of a municipal attorney and an assistant municipal attorney with regard to courts of record are specified by law. Title 11 O.S. 2001, § 28-109[11-28-109] states:
 The city attorney or municipal counselor and his assistants shall be the prosecuting officers of the municipal criminal court of record and the relation which they bear to the court shall be the same as that borne to the district court by the district attorney. They shall have full power to prosecute violations of any ordinance of the city in the municipal criminal court of record and shall have power to prosecute and resist appeals and proceedings in error or review from the municipal criminal court of record.
Id.
With regard to courts of record, a municipal attorney and an assistant municipal attorney "shall be the prosecuting officers" of the court and the relation to the court "shall be the same as that borne to the district court by the district attorney." Id. While both a municipal attorney and an assistant municipal attorney have the power of prosecution, this is not sufficient to find the positions are offices for purposes of the dual office holding provision. Neither position is an elected office and the positions are not fixed by law for a given time period as required by Guthrie Daily Leader and the more recent cases interpreting that case.[5] Thus, neither municipal attorneys nor assistant municipal attorneys are officers for purposes of the dual office holding prohibition.
There are even fewer elements of an office with regard to courts not of record. Title 11 O.S. 2001, § 27-108[11-27-108] sets the duties of the municipal attorney to be the prosecutor of municipal court in courts not of record, but provides no duties with regard to assistant municipal attorneys. "The prosecutor shall have full power to prosecute for the violations of any ordinance of the municipality in the municipal court and shall have the power to prosecute and resist appeals and proceedings in error and review from the municipal court." Id. As to courts not of record, the position of assistant municipal attorney is not created by law and no duties are imposed upon an assistant municipal attorney. Thus, this position does not constitute an office for purposes of the dual office holding prohibition.
It is important to recognize that our conclusion is based on statutory law regarding municipal attorneys and assistant municipal attorneys. The Supreme Court has held, "[a]n office or position which is created by municipal ordinance pursuant to power conferred by the Legislature upon the governing body is just as much created by law as if the Legislature itself had acted. . . ." Century Indemnity, 62 P.2d at 98. It is necessary to review the ordinances or charter of the particular municipality in question to determine whether the ordinances or charter impose additional or different obligations on an assistant municipal attorney. However, it is not likely our conclusion would change in your situation, given that you inquire about a person who serves as an assistant municipal attorney on an hourly, contractual basis.
Thus, unless a municipal ordinance or charter provides for specific terms of office or duties involving the exercise of sovereign powers by municipal attorneys, an ABLE employee may hold a position as a Law Enforcement Programs Administrator, a part-time hearing officer, an assistant municipal attorney and a commissioned ABLE agent.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Oklahoma law generally prohibits state employees from using state-owned vehicles for private use. 47 O.S. Supp. 2006, § 156.1[47-156.1](A). Pursuant to 47 O.S. Supp. 2006, § 156.1[47-156.1](B)(2), employees of the ABLE Commission who are law enforcement officers may use a state-owned vehicle to provide transportation between the employee's residence and the assigned place of employment, and between the residence and any location other than the assigned place of employment to which the employee travels in the performance of the employee's official duty.
 2.The law enforcement exception at 47 O.S. Supp.2006, § 156.1(B)(2) is based on the rationale that government transportation to a private residence at the end of the work day fulfills a public purpose, as the employee responds to emergencies from the residence. Ethics Commission v. Keating, 958 P.2d 1250, 1258 (Okla. 1998).
 3.To be a law enforcement officer of the ABLE Commission for purposes of 47 O.S. Supp.2006, § 156.1(B)(2), an employee must maintain a current CLEET certification pursuant to the provision of 70 O.S. Supp.2006, § 3311(D)(5), and must be charged by the agency with duties which require that person to engage in law enforcement activities.
 4.The Director of the ABLE Commission, in his role as the principal administrator of the agency, must designate an employee's status in writing before the employee is allowed to use a state-owned vehicle to provide transportation between the employee's residence and the assigned place of employment, and between the residence and any location other than the assigned place of employment to which the employee travels in the performance of the employee's official duty. 47 O.S. Supp.2006, § 156.1(C).
 5. Whether a particular employee is in a position which requires him or her to engage in law enforcement activities is a question of fact which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5). We can state, however, that those employees who are not commissioned agents and are not certified by CLEET are not considered law enforcement officers for purposes of 47 O.S. Supp.2006, § 156.1(B)(2).
 6. Oklahoma's prohibition against dual office holding, 51 O.S. Supp. 2006, § 6[51-6], prevents a person from holding more than one office under the law of the State. An "office" is defined as a position that is created by law for a given period of time and in which the individual is invested with some portion of the sovereign functions of the government. Guthrie Daily Leader v. Cameron, 41 P. 635, 636 (Okla. 1895). Section 6 does not prevent an employee from serving in the capacity of Law Enforcement Programs Administrator, part-time hearing officer, assistant municipal attorney and commissioned ABLE agent, as the only position of those four constituting an office is that of a commissioned agent. Although the positions of municipal attorney or assistant municipal attorney are not offices under State statutes, this Opinion does not address whether particular city ordinances or charters by their terms elevate these positions to offices.
[1] Council on Law Enforcement Education and Training.
[2] See letter from Director A. Keith Burt, Alcoholic Beverage Laws Enforcement Commission, to Attorney General Drew Edmondson (Sept. 27, 2006) (on file with the Attorney General's Office).
[3] Title 37 O.S. 2001, § 508[37-508] provides, "[t]he Director shall be the principal administrative officer of the ABLE Commission."
[4] The provisions applying to temporary designation are not applicable to your inquiry.
[5] In A.G. Opin. 01-34, we determined that assistant district attorneys were subject to the dual office holding prohibition as they were deputies of elected district attorneys. If a municipal attorney were an officer, an assistant municipal attorney would be a deputy if he performed "the duties of his principal." Century Indemnity,62 P.2d at 97. As a deputy, an assistant municipal attorney would be prohibited from holding another office.